**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 95-2708/2865

_____

Milton Weir,                               *
                                           *
    Plaintiff-Appellant/           *
    Cross-Appellee,                *
                                           *  Appeal from the United States
    v.                             *  District Court for the
                                           *  Southern District of Iowa.
Crispus Nix; James Helling;                *
Mary Piper,                                *
                                           *
    Defendants-Appellees/          *
    Cross-Appellants.              *

_____

Submitted:  February 12, 1997

Filed:   June 11, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

HANSEN, Circuit Judge.

Milton Weir, an inmate formerly at the Iowa State Penitentiary (ISP), appeals the district court's[1] judgment in favor of the defendants on five of his claims that the defendants violated his right to exercise his religion freely under the First Amendment and the Religious Freedom Restoration Act.  We affirm.

I.

Weir is a practicing fundamentalist Christian and, as such, believes that the Bible contains the literal word of God.  (Appellant's Br. at 7.) More specifically, Weir is a member of a particular sect of fundamentalists that believes in the doctrine of "separatism," which requires adherents to separate themselves from spiritual leaders whose teachings offend fundamentalist precepts.[2]

Weir filed a complaint pursuant to 42 U.S.C. § 1983 against several ISP officials in which he alleged that numerous penitentiary policies violated his right to the free exercise of religion guaranteed by the First Amendment.[3]  In the claims relevant to this appeal, Weir asserted that (1) the inclusive Protestant service conducted by the prison's chaplain was inconsistent with Weir's religious beliefs, and he requested the prison either to provide a spiritual advisor who shared his specific beliefs or to allow inmates

---

[1]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c) (1994).

[2]Some separatists believe that they also must worship separately from anyone who is not a fundamentalist.  (Appellant's Br. at 7.)  Weir does not adhere to this form of separatism, however.  (Appellant's App. at 271.)

[3]At oral argument, counsel informed the court that Weir recently had been transferred to a different prison.  Because Weir asserted a claim for damages, however, we believe that his transfer from ISP does not render his case moot.  See Pool v. Missouri Dep't of Corr. & Human Resources, 883 F.2d 640, 644 (8th Cir. 1989).

to lead fundamentalist services; (2) the prison's current allotment of three hours per week of organized worship was insufficient to meet his needs, and he needed at least one additional hour per week; (3) the prison's practice of holding religious services for protective custody inmates[4] on Fridays burdened his exercise of religion, and he requested that protective custody inmates be allowed to attend services on Sunday; (4) the prison's limit of 25 books in an inmate's cell at one time burdened his free exercise of religion; and (5) the prison's rule requiring all inmate property to remain in the inmate's cell prevented him from taking a Bible into the prison yard and thus burdened his exercise of religion.

After a bench trial, the district court found that none of the prison's policies listed above substantially burdened Weir's free exercise rights. The court thus denied Weir relief.[5] Weir appeals.

II.

First Amendment issues present mixed questions of law and fact. We review a district court's factual findings for clear error and its legal conclusions de novo. Hamilton v. Schriro, 74 F.3d 1545, 1552 (8th Cir.), cert. denied, 117 S. Ct. 193 (1996). As an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief. See Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-1 (1994); Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir.

---

[4]Weir was voluntarily in protective custody.

[5]The district court granted Weir relief on two separate claims. The appellees initially filed a cross-appeal challenging the district court's conclusions with respect to these claims. Weir's transfer to another prison, however, caused the appellees to move to dismiss their cross-appeal, a motion which we grant. Case No. 95-2865 is hereby dismissed.

3

1996) (RFRA analysis); Brown v. Polk County, Iowa, 61 F.3d 650, 656, 660 (8th Cir. 1995) (non-RFRA analysis). Only after the plaintiff first fulfills this duty must the government prove that its policy is the least restrictive means to further a compelling governmental interest.[6] Here, the district court concluded that these ISP policies did not substantially burden Weir's free exercise rights. This conclusion is a legal one, which we review de novo. In Re Young, 82 F.3d 1407, 1418 (8th Cir. 1996).

We have recently explained what constitutes a "substantial burden" on a person's free exercise rights.

> In order to be considered a "substantial" burden, the governmental action must 'significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.'

Id. (quoting Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir.), cert. denied, Thomas v. McCotter, 115 S. Ct. 2625 (1995)). We agree that none of the prison's five policies substantially burdened Weir's free exercise rights.

As mentioned earlier, Weir objected to having the prison's chaplain, Chaplain Vande Krol, as his spiritual advisor. Weir found Chaplain Vande Krol unsatisfactory

---

[6]While the Supreme Court has decided that the Free Exercise Clause of the First Amendment does not require the government to justify its "generally applicable" and "religion-neutral" laws under this heightened standard, Employment Div. v. Smith, 494 U.S. 872, 886 n.3 (1990), with RFRA, Congress imposed a statutory duty on the government to do so. In applying this standard in the prison context, however, we continue to defer "to the expertise of prison officials in establishing regulations to maintain prison safety and security. . . ." Hamilton, 74 F.3d at 1554.

because he is not a separatist, and he takes an inclusive approach in administering the prison's Protestant service.

The Constitution does not, however, require that a religious advisor be provided for every sect in a penitentiary. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). Nor is a prisoner entitled to insist on a religious advisor whose beliefs are completely congruent with his own. Blair-Bey v. Nix, 963 F.2d 162, 163-64 (8th Cir.), cert. denied, 506 U.S. 1007 (1992). Only when a prisoner's sole opportunity for group worship arises under the guidance of someone whose beliefs are significantly different from his own is there a possibility that the prisoner's free exercise rights are substantially burdened in this manner. See Sapanajin v. Gunter, 857 F.2d 463, 464 (8th Cir. 1988).

We do not believe that the district court clearly erred in finding that Chaplain Vande Krol's beliefs are not significantly different from Weir's. Although he takes an inclusive approach in his ministry, Chaplain Vande Krol himself is a fundamentalist Christian who understands and preaches the basic tenets of the fundamentalist faith. Moreover, Weir testified that he found Chaplain Vande Krol's theology doctrinally satisfactory except on the issue of separatism. (Appellant's App. at 252, 271.) Even though this difference exists, Weir's belief in separatism does not require him to worship separately from all non-fundamentalists. (Id. at 271.) Thus, we do not believe that the inclusive nature of Chaplain Vande Krol's service significantly impaired Weir's adherence to his faith. In any event, inmates at ISP are allowed to participate in two additional hours of unstructured devotional activities following their weekly hour-long service. During this two-hour period, Weir was free to conduct his own prayer group in an office adjoining the prison chapel. Additionally, during Weir's incarceration at ISP, a pastor who shares Weir's fundamentalist separatist beliefs visited the prison once a month to talk and work with the inmates. Overall, we conclude that neither Chaplain Vande Krol himself nor his services substantially burdened Weir's religious practice.

5

Similarly, we do not believe that the prison's policy of limiting inmates to three hours of group worship in the chapel per week significantly inhibited Weir's First Amendment rights. As explained above, on a weekly basis, inmates may attend a one-hour formal service in the chapel followed by two additional hours of unstructured devotional activities. Based on the approximation provided by a fundamentalist pastor who estimated that he spends four hours a week worshiping (id. at 112-14), Weir claims that he needed an additional hour of group worship per week. We are not convinced, however, that Weir's faith mandates any minimum number of hours of congregate worship each week, and we believe that three hours of group worship per week provided Weir with a reasonable opportunity to exercise his religious freedom. See Cruz, 405 U.S. at 322 n.2.

We also find no merit to Weir's claim that ISP's policy of holding religious services for protective custody inmates on Fridays as opposed to Sundays substantially burdened his free exercise rights. The evidence indicates that Sunday worship, albeit traditional, is not a doctrinal necessity for fundamentalists. Two fundamentalist pastors testified that fundamentalists could worship on any day and that they often worship on Wednesdays. (Appellant's App. at 97-98, 121.) Moreover, Weir was voluntarily in protective custody; if he wanted to worship on Sunday he could have gone back into the general prison population. This rule did not significantly inhibit Weir's practice of a "central tenet" of his religion.[7] In Re Young, 82 F.3d at 1418.

Weir's evidence bearing on his final two complaints regarding the prison's rule of allowing an inmate to have at most 25 books at one time in his cell and the prison's

------

[7]In passing, Weir asserts that Iowa Code Section 904.511 provides him with a statutory right to attend church services on Sunday. While we are skeptical that the statute provides him with such a right, it is immaterial in this case because a violation of state law, without more, is insufficient to establish a claim under 42 U.S.C. § 1983. Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996).

prohibition of personal property in the prison yard clearly does not establish that these rules substantially infringed upon Weir's right to freely exercise his religion. Weir's request for a "well-rounded research library" in his cell is and was outlandish. (Appellant's App. at 232.) The record indicates that the most important book for fundamentalist Christian study is the Bible. (<u>Id.</u> at 98.) The rule allowed Weir to have access to a Bible as well as many other books that facilitated his religious study. Moreover, the limit is only on the number of books an inmate can have at any one time in his cell. Weir was free to check out new books from the prison library as long as he did not possess more than 25 books in his cell at one time. Likewise, the ISP rule against taking personal property to the prison yard did not substantially burden Weir's practice of religion. Although this rule prevented Weir from taking his Bible into the prison yard, Weir was free to use his Bible in his cell in order to prepare for the evangelism and counseling that he sought to do with the assistance of his Bible in the prison yard.[8]

In conclusion, we find it necessary to remind Mr. Weir that "incarceration necessarily, and constitutionally, entails restrictions, discomforts, and a loss of privileges that complete freedom affords." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 369 (1981) (Blackmun, J., concurring).

III.

Having demonstrated that none of the challenged ISP policies substantially burdened Weir's rights under the Religious Freedom Restoration Act and the Free

---

[8]In his brief, Weir asserts that ISP officials allowed general population inmates to take personal property into the yard. To the extent that Weir makes an equal protection claim on appeal, we affirm the district court's denial of such a claim due to insufficient proof of such disparate treatment.

Exercise Clause of the First Amendment, we affirm the judgment of the district court in No. 95-2708 and dismiss the cross appeal in No. 95-2865.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

8