# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1168
No. 00-1489

_____

| | | |
|---|---|---|
| Thomas Altman; Kristen Larson; Kenneth Yackly, | * | |
| | * | |
| | * | |
| Plaintiffs - Appellants/ Cross Appellees, | * | |
| | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Minnesota Department of Corrections, et al., | * | |
| | * | |
| | * | |
| | * | |
| Defendants - Appellees/ Cross Appellants. | * | |
| | * | |

_____

Submitted: November 15, 2000

Filed: May 29, 2001
_____

Before LOKEN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

LOKEN, Circuit Judge.

Thomas Altman, Kristen Larson, and Kenneth Yackly are employees of the Minnesota Department of Corrections assigned to the correctional facility in Shakopee, which we will refer to as MCFS. In October 1997, they silently read their Bibles

during a mandatory seventy-five-minute training program entitled "Gays and Lesbians in the Workplace." The three received written reprimands, which made Larson and Yackly ineligible for promotions then in progress. They filed this action against the Department and various officials alleging, *inter alia*, that the reprimands violated their federal and state constitutional rights of free speech, free exercise of religion, and freedom of conscience, their right to equal protection of the law, and Title VII. For relief, they sought a declaratory judgment that their discipline was illegal and unconstitutional, withdrawal of the reprimands, promotion of Larson and Yackly with back pay and benefits, rescission of Altman's negative performance evaluation, compensatory damages for humiliation and anguish, and attorneys' fees.

The district court granted summary judgment dismissing the employees' free speech, equal protection, and title VII claims. The employees appeal those rulings, and we will hereafter refer to them collectively as "Appellants." The court upheld Appellants' free exercise and freedom of conscience claims. It granted the individual defendants qualified immunity on those damage claims and ordered defendants in their official capacities to withdraw the written reprimands. Appellants appeal the grant of qualified immunity, the refusal to order Larson and Yackly promoted, and the denial of attorneys' fees. Defendants cross appeal the grant of any relief on Appellants' free exercise and freedom of conscience claims. Concluding that Appellants have raised triable free speech, equal protection, and Title VII issues, we reverse.

## I. Background

In mid-1997, MCFS's training director persuaded Warden Connie Roehrich to include in the next regular one-day training session a program dealing with issues of gays and lesbians in the workplace. When the agenda for the training session was published to MCFS staff, Altman sent Roehrich an e-mail objecting to the mandatory nature of this program and protesting that it would "raise deviant sexual behavior for staff to a level of acceptance and respectability." Faced with this protest, and rumors

that other staff members objected to this part of the mandatory training session, Roehrich issued a memorandum to all staff explaining that the gays-and-lesbians-in-the-workplace program was part of "the facility's strong commitment to create a work environment where people are treated respectfully, regardless of their individual differences." The training is not "designed to tell you what your personal attitudes or beliefs should be," the memorandum continued, but all employees must attend.

Prior to the training session, Appellants reviewed the training materials for the gays-and-lesbians-in-the-workplace program and concluded the training would be, in the words of their complaint, "state-sponsored indoctrination designed to sanction, condone, promote, and otherwise approve behavior and a style of life [Appellants] believe to be immoral, sinful, perverse, and contrary to the teachings of the Bible."

Immediately prior to the session, Appellants met and decided to read their Bibles during this program as a silent protest and as support because of the discomforting subject matter. During the program, Appellants read their Bibles, copied scripture, and participated to a limited extent. They did not disrupt the trainers' presentation. Numerous supervisors attended the program; none complained about Appellants' behavior or told them to stop reading their Bibles.

After the program, two of the trainers reported Appellants' behavior, and the MCFS Affirmative Action Officer filed a complaint. Following an internal investigation, written reprimands were issued to Appellants as formal discipline. The reprimands were based on Appellants' conduct during this portion of the training session. The reprimands made Appellants ineligible for promotion for two years. The summary judgment record includes deposition testimony by numerous witnesses that, to their knowledge, prison officials have *never* disciplined other employees who were inattentive during training sessions, for example, by sleeping or reading magazines.

## II. Free Speech, Equal Protection, and Title VII Claims

To prevail on their First Amendment claims, Appellants must prove they were punished for conduct "fairly characterized as constituting speech on a matter of public concern," Connick v. Myers, 461 U.S. 138, 146 (1983), and that their interest in speaking out on that matter of public concern "outweighs the public employer's interest in promoting its efficiency by prohibiting the conduct." Dunn v. Carroll, 40 F.3d 287, 291 (8th Cir. 1994), citing Pickering v. Board of Educ., 391 U.S.C 563, 568 (1968). Appellants contend that defendants violated Appellants' right to equal protection of the law because defendants have not disciplined similarly situated persons -- employees who have been inattentive for other reasons during MCFS training sessions. In their Title VII claim, Appellants allege they were impermissibly disciplined on the basis of their religious beliefs. In our view, these claims raise genuine, interrelated issues of material fact.

Appellants argue that reading their Bibles during the training program was nonverbal conduct that qualifies as speech for First Amendment purposes, an issue defendants do not contest for summary judgment purposes. However, the district court concluded that Appellants did not engage in speech on a matter of public interest and concern because they were "concerned only with internal policies or practices which are of relevance only to the employees of that institution." Cox v. Dardanelle Pub. Sch. Dist., 790 F.2d 668, 672 (8th Cir. 1986); see Buazard v. Meridith, 172 F.3d 546, 549 (8th Cir. 1999). We disagree. Though the issue is inherently "internal," the way in which the Department and MCFS deal with issues of gays and lesbians in the workplace affects the performance of their public duties and is a matter of political and social concern to the general public. By making attendance at the training session mandatory, MCFS created a context in which employees speaking out in opposition to their public employer's handling of this social issue should be considered speech on a matter of public interest and concern. See, e.g., Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1117 (8th Cir. 1997).

Even if a public employee's speech addresses a matter of public concern, "[t]he Pickering balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." Connick, 461 U.S. at 150. We deal here with actions of the government as public employer, not as sovereign, and "constitutional review of government employment decisions must rest on different principles than review of speech restraints imposed by the government as sovereign." Waters v. Churchill, 511 U.S. 661, 674 (1994) (plurality opinion).[1] The public employer will be justified in imposing discipline if the speech impeded the employee's ability to perform his or her responsibilities, or undermined office relationships, or disrupted office operations or efficiencies. See Kincade v. City of Blue Springs, 64 F.3d 389, 397 (8th Cir. 1995). In this regard, a public employer may decide to train its employees, it may establish the parameters of that training, and it may require employees to participate. An employee who refuses to be trained has, from the employer's reasonable perspective, impeded his or her ability to do the job.

Defendants argue that Appellants were reprimanded for insubordination -- refusing to be trained -- not for their nonverbal speech. This is a potentially strong argument under the Pickering line of cases, but it is not supported by the *undisputed* facts in this summary judgment record. In our view, the critical fact is that other employees have been similarly inattentive at MCFS training sessions, but none has ever

---

[1]Judge Lay argues in dissent that Appellants are entitled to summary judgment on their First Amendment claims because "motive analysis is irrelevant to the free speech claim." For this proposition the dissent cites only cases involving the government as sovereign. But in Crawford-El v. Britton, 523 U.S. 574, 585 (1998), the Supreme Court cited as examples of federal claims in which a government official's motive is a necessary element "termination of employment based on political affiliation in violation of the First Amendment" and "retaliation for the exercise of free speech or other constitutional rights." Likewise, in Waters v. Churchill, which involved a public employee free speech claim, the Court held that summary judgment was improper because the employee "produced enough evidence to create a material issue of disputed fact about [defendants'] actual motivation." 511 U.S. at 681.

been disciplined. Thus, the only employees disciplined for "insubordination" are those who spoke out in opposition to the training message, despite Warden Roehrich's prior assurance that, "In no way is this training designed to tell you what your personal attitudes or beliefs should be." Moreover, Appellants were selected out for punishment after conveying their opposition by reading the Bible. Of course, defendants' motive for reprimanding Appellants is a disputed issue of fact. But summary judgment dismissing their First Amendment, equal protection, and Title VII claims is inappropriate (either on the merits or on the basis of qualified immunity[2]) when a trial might establish that the reason for the discipline was Appellants' non-disruptive speech, or their religion, or the fact that they expressed their opposition through religious activity, and that other employees went unpunished who showed equally insubordinate but less constitutionally protected disregard for MCFS training.[3] Likewise, we reverse the dismissal of Appellants' state law free speech claims based upon Article 1, § 3 of the Minnesota Constitution, whose protections are co-extensive with those of the First Amendment. See State v. Wicklund, 589 N.W.2d 793, 798-801 (Minn. 1999).

---

[2]The individual defendants argue they are entitled to qualified immunity on Appellants' free speech and equal protection claims, but their argument assumes the absence of unconstitutional motive. In granting defendants summary judgment on the merits of these claims, the district court did not reach the question of qualified immunity. We do not foreclose the court from taking up the question on remand, consistent with the Supreme Court's guidelines in Part IV of its Crawford-El opinion, 523 U.S. at 597-601.

[3]We note that, even if Appellants were more harshly treated than other similarly intransigent trainees, an equal protection violation requires proof of "something more than different treatment by government officials"; there must also be "the presence of an unlawful intent to discriminate against the plaintiff for an invalid reason," such as their religion. Batra v. Board of Regents, 79 F.3d 717, 721 (8th Cir. 1996).

### III. Free Exercise of Religion/Freedom of Conscience Claims

Appellants claim that reprimanding them for reading their Bibles during the training program violated their First and Fourteenth Amendment rights to freely exercise their religion. To prevail on this claim, they must first show "that the governmental action complained of substantially burdened their religious activities." Brown v. Polk County, 61 F.3d 650, 658 (8th Cir. 1995) (en banc). If they prove that a substantial burden would otherwise result, then their government employer must tolerate religious activities "that can be accommodated without undue hardship." Id. at 654. We decide the undue hardship issue by applying to this free exercise inquiry the Pickering balancing test used in public employee free speech cases. Id. at 658.

Focusing exclusively on whether the Bible reading adversely affected the prison's ability to function effectively, the district court concluded that Appellants' free exercise rights were violated because Appellants' Bible reading did not disrupt the training session nor adversely affect working relationships among MCFS staff, and because prison officials have not disciplined other employees who were inattentive during training sessions. Defendants appeal this ruling, arguing that Appellants' exercise of religion was not significantly burdened. We agree.

Government significantly burdens the exercise of religion if it significantly constrains conduct or expression that manifests a central tenet of a person's religious beliefs, meaningfully curtails the ability to express adherence to a particular faith, or denies reasonable opportunities to engage in fundamental religious activities. See Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997). One type of burden occurs when government "conditions receipt of an important benefit [such as employment] upon conduct proscribed by a religious faith, or . . . denies such a benefit because of conduct mandated by religious belief." Thomas v. Review Bd., 450 U.S. 707, 717-18 (1981). This is an issue of law we review *de novo*. Weir, 114 F.3d at 820.

-7-

It is telling that neither the district court nor Appellants even attempt to identify a significant burden in this case. Appellants do not suggest that their religion requires them to read the Bible while working, and the record reflects that Larson has brought her Bible to work and read it during lunch periods and breaks without punishment or criticism from her supervisors. Shifting our focus from the Bible-reading to the training program, Appellants alleged in their complaint that they opposed the training program as "little more than state-sponsored propaganda promoting the acceptance of homosexuality," behavior they "sincerely believe . . . is immoral and sinful." Accepting that these are faith-based beliefs, we note that Warden Roehrich's memorandum assured all employees that their employer was not telling anyone what to believe. Thus, the only burden placed on Appellants was a requirement they attend a seventy-five-minute training program at which they were exposed to widely-accepted views that they oppose on faith-based principles. This is not, in our view, a substantial burden on their free exercise of religion.

Appellants' state law freedom of conscience claims are based upon Article 1, § 16 of the Minnesota Constitution. Like the Free Exercise Clause, this provision only applies to state action that "excessively burdens" religious beliefs. Hill-Murray Federation v. Hill-Murray High School, 487 N.W.2d 857, 866 (Minn. 1992). Accordingly, the failure to establish a substantial burden on Appellants' exercise of religion defeats their freedom of conscience claims as well.

The judgment of the district court is reversed, and the case is remanded with instructions to dismiss Appellants' free exercise and freedom of conscience claims and for further proceedings not inconsistent with this opinion.

LAY, Circuit Judge, concurring in part and dissenting in part.

While I concur with much of the majority's opinion, with all due respect, I write separately to express a limited area of disagreement.

I agree that MCFS's cross-appeal on the free exercise issue should be granted and the district court's judgment reversed. Plaintiffs have not demonstrated a substantial burden to their religious activities. I further agree that there are disputed issues of fact on the Title VII and equal protection claims that preclude summary judgment.

I disagree, however, with the majority's treatment of the free speech issue. While I concur that the district court erred in granting summary judgment to MCFS on this issue, this court should hold that plaintiffs succeed on their free speech claims as a matter of law. It is uncontested that there was an entire class of "insubordinate" employees at these training sessions. They were engaged in a variety of activities: sleeping, secular reading materials, and paperwork, along with the plaintiffs who quietly read their Bibles. MCFS supervisors, well aware of the class of "insubordinate" employees, punished only those employees who were engaged in religious reading. Thus, I fail to see any factual dispute on the free speech issue: plaintiffs were clearly punished because of the content of their behavior, rather than the behavior itself. This is clearly unconstitutional. See R.A.V. v. St. Paul, 505 U.S. 377, 383-387 (1992) (holding content-based discrimination is forbidden even if the government has the authority to ban the underlying activity); Rodney A. Smolla, Smolla and Nimmer on Freedom of Speech, § 3:10 (2000) ("[a]t the core of R.A.V. there lies the proposition that the First Amendment's restrictions on content-based and viewpoint-based discrimination apply even when the government regulation involves a type of speech that *as a class* normally receives no First Amendment protection.") While I concur that the Title VII and equal protection claims must be remanded because the presence of invidious motive is disputed, such a motive analysis is irrelevant to the free speech claim. See Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd., 502 U.S. 105 (1991) ("our cases have consistently held that illicit . . . intent is not the *sine qua non* of a violation of the First Amendment.") (quotations omitted); Smolla, supra, § 3:5 ("[the Supreme Court does] not requir[e] evidence of an invidious motive to discriminate against or censor certain types of speech.") (emphasis omitted).

-9-

As far as qualified immunity, this court should decide the qualified immunity question as a matter of law.[4]   Admittedly, where there is a disputed issue of fact between the parties, summary judgment on the question of qualified immunity is inappropriate.  See Gainor v. Rogers, 973 F.2d 1379, 1385 (8th Cir. 1992); Duncan v. Storie, 869 F.2d 1100 (8th Cir. 1989) (holding dispute over where defendant was arrested--inside or outside his home--precluded summary judgment on qualified immunity).  But as the majority concedes, the only disputed fact here is defendants' motive for punishing the plaintiffs.  According to the Supreme Court, however, motive is irrelevant to a qualified immunity defense.  See Harlow v. Fitzgerald, 457 U.S. 800, 817 (1982); Crawford-El v. Britton, 523 U.S. 574, 588 (1998) ("[under existing precedent] a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated.  Evidence concerning the defendant's subjective intent is simply irrelevant to that defense.").  As the Court said in Harlow, such a subjective analysis defeats the purposes behind qualified immunity, since "[j]udicial inquiry into subjective motivation therefore may entail broad-ranging discovery . . . . [i]nquires of this kind can be peculiarly disruptive of effective government."  Harlow, 457 U.S. at 817.  Since there is no issue of disputed fact (other than the defendants' motive, which is irrelevant to the qualified immunity analysis), we should directly address the qualified immunity question as a matter of law.

Therefore, we should grant the MCFS's cross-appeal on the free exercise claim and reverse the district court's judgment.  I further agree that we should reverse the district court judgment on the free speech, Title VII, and equal protection claims. While the majority would remand all three claims for a trial, I would remand only the Title VII and equal protection claims, granting judgment to the plaintiffs on their free speech claim as a matter of law.

_____

[4]Since I would decide the free speech issue as a matter of law, obviously I would reach the qualified immunity question there as well.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.