Jeffrey BALAWAJDER, Appellant,

v.

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE INSTITUTIONAL DIVISION, Appellee.

No. 01–04–00820–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 31, 2006.

Rehearing Overruled Sept. 15, 2006.

Jeffrey Balawajder, Huntsville, TX, pro se.

Kimberly L. Fuchs, Assistant Attorney General, Joel L. Thollander, Office of the Attorney General, Solicitor General's Division, Austin, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Jeffrey Balawajder, appeals from a motion for summary judgment granted in favor of appellee, Texas Department of Criminal Justice Institutional Division (the Department). In his first 13 issues and issue 15, Balawajder contends that the trial court erred by granting summary judgment in favor of the Department, and by not granting summary judgment his favor, because the Department violated his right to free exercise of religion under the Texas Religious Freedom Restoration Act (TRFRA) and the First Amendment of the United States Constitution. In his issue 14, Balawajder contends that the trial court erred by not vacating the summary judgment entered in favor of the Department because the Department violated Balawajder's right to equal protection under Article 1, section 3a of the Texas Constitution by "allowing him additional storage space for writings about subjects of law, but not allowing him additional storage space for writing [sic] about subjects of religion."

We conclude that the trial court erred by granting summary judgment in favor of the Department because fact questions remain regarding (1) whether the Department has a compelling interest not to allow additional storage space for religious materials, to the extent that it allows additional storage space for legal and educational materials, and (2) whether the Department has a compelling interest to prevent the administrative burden on prison officials that would be required by review of prisoners' eligibility for additional storage space for religious materials. We further conclude that because these fact questions remain, Balawajder did not conclusively establish that A.D. 3.72 violates TRFRA. We thus sustain the portion of Balawajder's issues one through 13 and 15 that contend the trial court erred by granting summary judgment in favor of the Department, overrule those portions that contend the trial court erred by not granting summary judgment in favor of Balawajder, and need not address Balawajder's constitutional complaints.

## Background

Balawajder, a follower of the Hare Krishna religion, has been an inmate in the Department prison system since 1989. In

October 1999, Balawajder filed a request asking the Department to allow him to practice his religion, which he asserted was substantially burdened by the Department Administrative Directive 3.72 (AD 3.72).[1] AD 3.72 provides that except for certain noncombustible items, "the total volume of an offender's property must be placed in [a] closable storage container" not to exceed two cubic feet in size. Balawajder stated in his affidavit supporting the request that as a follower of the Hare Krishna religion, he is required to study the Hare Krishna scriptures, which consist of "several hundreds of volumes of books." According to Balawajder, AD 3.72 substantially burdened his practice of the Hare Krishna religion by preventing him from possessing the "hundreds of volumes of

Hare Krishna scriptures" needed to practice his religion.

In May 2000, Balawajder filed a grievance with the Department that was denied. Balawajder appealed the denial, but his appeal was denied in June 2000. Balawajder subsequently filed this lawsuit pursuant to the TRFRA, contending that AD 3.72 imposed a substantial burden on his free exercise of religion that was neither in furtherance of a compelling governmental interest nor the least restrictive means of furthering that interest.[2] The Department filed a motion for summary judgment, alleging that as a matter of law, AD 3.72 furthers a compelling governmental interest and is the least restrictive means of furthering that interest.[3] Balawajder also

1. Balawajder requested the Department to provide him with either of the following:

> (A) ... (1) reasonable daily access to a library of the Hare Krishna scripture and literature consisting of the Hare Krishna Scripture and literature described in Exhibits A and B; and (2) an addition [sic] closeable storage locker, similar to the storage lockers the [Department] provides for legal materials, not less than 2.25 cubic [feet], to store my personal religious materials in my housing area; or
> (B) allow me to purchase and use a lockable cabinet up to 25 cubic feet in size to store my personal Hare Krishna religious material in the [prison] under the following conditions: (1) the cabinet will be placed in the chapel or other religious programming area; (2) the [Department] will allow me to have the cabinet shipped, at my expense, to the prison unit where I am now assigned to live and if I am reassigned live [sic] at another prison unit, then to have the cabinet and contents shipped, at my expense, to that unit [in other words, the [Department] will allow me to transfer the cabinet and contents to the same unit where I am assigned to live]; (3) the only things stored in that cabinet will be Hare Krishna scriptures and things used to study them, including but not limited to, publications about the Hare Krishna religion, documents about the Hare Krishna religion, notes, study materi-

als, catalogs from businesses supplying Hare Krishna religious materials, and materials used for study, such as writing paper and pens; and (4) the [Department] will allow me a reasonable daily access of not less than 15 minutes to borrow, replace, remove or add to the things allowed to be stored in that cabinet.

2. Balawajder requested the following relief in his original petition:

> that the [Department] either: (1) provide to me a library of Hare Krishna Religious literature and a small locker box to store the materials necessary to study them; or (2) allow me to purchase, at my expense, a storage cabinet or cabinets in which I can store my personal library of Hare Krishna literatures [sic], purchased at my expense, and materials necessary to study them.

3. Specifically, the Department asserted the following grounds for summary judgment:

> It is self-evident that [the Department] has a compelling governmental interest in limiting the amount of property an inmate may possess and in not awarding any inmate special privileges or preferential treatment.... A related compelling governmental interest is allowing prison chaplains to perform their normal duties attending to prisoners' spiritual needs, rather than processing inmate requests for more storage

filed a motion for summary judgment, alleging that as a matter of law, the storage space limitation in AD 3.72 does not further a compelling governmental interest and is not the least restrictive means of furthering that interest. On October 15, 2002, the trial court granted the Department's motion for summary judgment and denied Balawajder's motion for summary judgment.

## Summary Judgment Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Cigna Ins. Co. v. Rubalcada,* 960 S.W.2d 408, 411–12 (Tex.App.-Houston [1st Dist.] 1998, no pet.). We render such judgment as the trial court should have rendered. *Agan,* 940 S.W.2d at 81; *Rubalcada,* 960 S.W.2d at 412. When, as here, a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004).

Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). The motion must state the specific grounds relied upon for summary judgment. *Id.* In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co.,* 164 S.W.3d at 661.

## TRFRA Requirements

TRFRA provides that "a government agency may not substantially burden a person's free exercise of religion" unless "the government agency demonstrates that the application of the burden to the person ... is in furtherance of a compelling government interest; and ... is the least restrictive means of furthering that interest." Tex. Civ. Prac. & Rem.Code Ann.

---

space and making individual determinations about which inmates get how much space, and dealing with inmate complaints over this issue....

To prove a violation of Chapter 110, Balawajder must prove (1) that [the Department's] refusal to let him have storage space for 100 books substantially burdens his free exercise of religion; (2) that [the Department] has no compelling interest in treating all inmates equally; and (3) if [the Department] does have a compelling interest, whether its ban on extra space for religious books is the least restrictive means of furthering that interest.

[The Department] concedes, for the purpose of this motion, that preventing Balawajder from having his 100 books substantially burdens his free exercise of religion. But Balawajder has failed to address, let alone prove, the other two things he must show to win this lawsuit. He has not, because he cannot, dispute [sic] that [the Department] has a compelling interest in treating all inmates the same and avoiding even the appearance of favoritism. The real question is whether [the Department's] blanket ban on extra storage space is a least restrictive means of furthering [the Department's] obvious interest in uniform treatment of its inmates. Balawajder has completely failed to address this issue. Once again, he has not addressed it because he cannot. There is no other way to avoid the appearance of favoritism in the allocation of storage space. If some inmates get more storage space than others, then by definition, [the Department] has treated some inmates differently than others, contrary to its interest in not doing so.

§ 110.003(a)–(b) (Vernon 2005). TRFRA defines "free exercise of religion" as

> an act or refusal to act that is substantially motivated by sincere religious belief. In determining whether an act or refusal to act is substantially motivated by sincere religious belief . . ., it is not necessary to determine that the act or refusal to act is motivated by a central part or central requirement of the person's sincere religious belief.

TEX. CIV. PRAC. & REM.CODE ANN. § 110.001(a)(1) (Vernon 2005).

▉▉▉▉▉ The federal counterpart to TRFRA is the Religious Land Use and Institutionalized Persons Act (RLUIPA).[4] *See Adkins v. Kaspar*, 393 F.3d 559, 567 & n. 32 (5th Cir.2004). The language of RLUIPA regarding the burdens of proof required to demonstrate a violation is substantially similar to that language in TRFRA, and we thus refer to federal caselaw construing the RLUIPA burdens of proof for our analysis of TRFRA burdens of proof. *See* 42 U.S.C.S. § 2000cc–1 (Supp.2006)[5]; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 110.003(a)–(b); *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 692 (Tex.App.-Austin 2005, no pet. h.) (stating, "When the same or a similar term is used in the same connection in different statutes, the term will be given the same

meaning in one as in the other, unless there is something to indicate that a different meaning was intended") (quoting *Guthery v. Taylor*, 112 S.W.3d 715, 721–22 (Tex.App.-Houston [14th Dist.] 2003, no pet.)). Under RLUIPA, and hence TRFRA, the plaintiff bears the initial burden of showing that the government is substantially burdening his free exercise of religion. *See Adkins*, 393 F.3d at 567 (holding that under RLUIPA, plaintiff has initial burden of persuasion to demonstrate that government practice imposes "substantial burden" on his religious exercise).

Once a plaintiff shows that his free exercise of religion has been substantially burdened, however, the Texas and federal acts differ regarding which party next has the burden of proof. In Texas, a rule "that applies to a person in the custody of a jail or other correctional facility . . . is presumed to be in furtherance of a compelling governmental interest and the least restrictive means of furthering that interest," but the presumption is rebuttable. TEX. GOV'T CODE ANN. § 493.024 (Vernon 2004). Under TRFRA, therefore, a complaining party must rebut the presumption that any prison regulation that substantially burdens a prisoner's free exercise of religion is in furtherance of a compelling governmental interest and the least restrictive means of furthering that interest.

---

4. TRFRA, like RLUIPA, "was enacted to provide greater protection for religious practices than the federal constitution as currently interpreted." *Voice of Cornerstone Church Corp. v. Pizza Prop. Partners*, 160 S.W.3d 657, 672 (Tex.App.-Austin 2005, no pet.). Specifically, TRFRA requires a strict scrutiny analysis, whereas a challenge to a prison regulation under the United States Constitution must demonstrate that the regulation is not "reasonably related to legitimate penological interests." *Williams v. Lara*, 52 S.W.3d 171, 187 (Tex.2001) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 110.003(a)–(b) (Vernon 2005).

5. RLUIPA states the following:

> (a) General rule. No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C.S. § 2000cc–1 (Supp.2006).

*See id.* TRFRA is unlike RLUIPA, which places the entire burden of proof on the government to show that its substantially burdensome practice is in furtherance of a compelling governmental interest and the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1(a); TEX. GOV'T CODE ANN. § 493.024.

■■■ As noted above, AD 3.72 is presumed to be in furtherance of the compelling governmental interest and the least restrictive means of furthering the interest. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 110.003(a)–(b); TEX. GOV'T CODE ANN. § 493.024. "A presumption is simply a rule of law requiring the trier of fact to reach a particular conclusion in the absence of evidence to the contrary." *Temple Indep. Sch. Dist. v. English,* 896 S.W.2d 167, 169 (Tex.1995). Thus, "[t]he presumption disappears when evidence to the contrary is introduced." *Id.* Accordingly, "[t]he effect of a presumption is to force the party against whom it operates to produce evidence to negate the presumption." *Amaye v. Oravetz,* 57 S.W.3d 581, 584 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). In the context of a summary judgment, the party against whom the presumption operates must produce evidence sufficient "to neutralize the effect of the presumption" for the case to proceed to trial. *Id.* Thus, the party seeking to rebut the presumption must present evidence raising a fact issue against the presumption to withstand summary judgment.[6] *See id.* To rebut the presumption, therefore, the party resisting the government regulation must present more than a scintilla of evidence, *see id.,* to show that the government regulation does not further a compelling governmental interest and that the regulation is not the least restrictive means of furthering that interest. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 110.003(a)–(b); TEX. GOV'T CODE ANN. § 493.024.

■■■ Prison and jail administrators have a compelling interest to establish

6. The Department asserts that this Court should hold that inmates must produce clear and convincing evidence to rebut the presumption that favors AD 3.72. The Department cites three cases in support of this proposition that are distinguishable from this case. Two of these cases cite well-established common law presumptions that require clear and convincing evidence for rebuttal. *See Kawaja v. State,* No. 03–05–00491–CV, 2006 WL 1559343, at *2 (Tex.App.-Austin 2006, no pet. h.) (stating that taxpayer must present conclusive evidence to rebut presumption of correctness of comptroller's delinquency certificates); *Richardson v. Laney,* 911 S.W.2d 489, 492 (Tex.App.-Texarkana 1995, no pet.) (stating that presumption of donative intent must be rebutted by clear and convincing evidence). Here, however, the presumption is statutory, rather than a well-established common law presumption. The remaining case cited by the Department references a statutory presumption that expressly requires clear and convincing evidence for rebuttal. *See In re J.A.M.,* 945 S.W.2d 320, 324 (Tex.App.-San Antonio 1997, no writ) (noting that the Family Code requires clear and convincing evidence to rebut presumption of paternity). We note that the TRFRA statutory presumption does not expressly require clear and convincing evidence for rebuttal. We read every word in a statute as if it were deliberately chosen and presume that omitted words were excluded purposely. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981); *Cornyn v. Universe Life Ins. Co.,* 988 S.W.2d 376, 379 (Tex.App.-Austin 1999, pet. denied). Therefore, we presume that had the legislature intended to require clear and convincing evidence to rebut the presumption that favors prison regulations, the legislature would have expressly set forth this requirement in TRFRA. *See id.* Thus, though the presumption obviates the need of the moving party to conclusively establish the presumed facts by adducing evidence unless the presumption is rebutted, we apply the general rule that the nonmovant need only present evidence raising a fact issue to rebut the presumption at summary judgment. *See Amaye v. Oravetz,* 57 S.W.3d 581, 584 (Tex.App.-Houston [14th Dist.] 2001, pet denied).

28 ▪ ▬▬▬▬▬▬▬

"necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Diaz v. Collins,* 114 F.3d 69, 73 (5th Cir.1997) (quoting S.Rep. No. 103–111, at 10, *as reprinted in* 1993 U.S.C.C.A.N. at 1900). The "orderly administration of [a] prison" is thus a compelling governmental interest that justifies a substantial burden on the exercise of religion.[7] *Ganther v. Ingle,* 75 F.3d 207, 212 (5th Cir.1996).

▪ Once a party has carried its burden of production by producing some evidence to rebut the presumption that the substantial burden furthers a compelling government interest in the least restrictive means, thus neutralizing the presumption's effect, *see Temple Independent School District,* 896 S.W.2d at 169; *Amaye,* 57 S.W.3d at 584, the burden of persuasion shifts to the governmental agency to show that application of its substantially burdensome practice is in furtherance of a compelling governmental interest and that it is the least restrictive means of furthering that interest. *See Adkins,* 393 F.3d at 567 & n. 32.

### Analysis

Balawajder contends that the trial court erred by granting summary judgment in favor of the Department, and by not granting his motion for summary judgment because the Department violated his right to free exercise of religion under TRFRA. Under the shifting burdens of proof described above, Balawajder must overcome two initial burdens. First, he must show that his free exercise of religion was substantially burdened by the Department's rule. *See* TEX. CIV. PRAC. & REM.CODE ANN.

§ 110.003(a)–(b); *see also Adkins,* 393 F.3d at 567 & n. 32. Second, he must rebut the presumption that favors the Department's rule by introducing more than a scintilla of evidence to show that the rule, as applied to him, (1) does not further a compelling government interest, and (2) is not the least restrictive means of furthering that interest. TEX. GOV'T CODE ANN. § 493.024; *see Temple Indep. Sch. Dist.,* 896 S.W.2d at 169; *Amaye,* 57 S.W.3d at 584. Once Balawajder introduces more than a scintilla of evidence to neutralize the presumption's effect, the Department has the final burden of proof to show that AD 3.72 furthers a compelling government interest in the least restrictive means. *See Adkins,* 393 F.3d at 567 & n. 32.

### A. Substantial Burden

▪ Although in this appeal both parties dispute whether Balawajder's free exercise of religion was substantially burdened by the Department's rule, at summary judgment, the Department conceded that Balawajder's free exercise of religion was substantially burdened by the rule. We cannot consider issues on appeal from summary judgment that the movant did not present to the trial court. *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 862 (Tex.2000). Specifically, because "summary judgment is a harsh remedy," we must "strictly construe [the movant's] summary judgment grounds." *Tanksley v. CitiCapital Commercial Corp.,* 145 S.W.3d 760, 763 (Tex. App.-Dallas 2004, pet. denied) (citations omitted). Thus, a summary judgment motion "must stand or fall on the grounds expressly presented in the motion." *McConnell v.*

---

7. To determine "whether an interest is a compelling governmental interest," we must "give weight to the interpretation of compelling interest in federal case law relating to the free

exercise of religion clause of the First Amendment of the United States Constitution." TEX. CIV. PRAC. & REM.CODE ANN. § 110.001(b) (Vernon 2005).

*Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *accord Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex.1997). Although "[g]rounds may be stated concisely, without detail and argument[,] ... they must at least be listed in the motion." *McConnell*, 858 S.W.2d at 340.

In its motion for summary judgment, the Department stated under the "undisputed facts" heading that "[the Department's] refusal to let Balawajder have extra storage space for his 100 books substantially burdens Balawajder's free exercise of religion." The Department further stated, "[The Department] concedes, for the purpose of this motion, that preventing Balawajder from having his 100 books substantially burdens his free exercise of religion." The Department thus affirmatively asserted, for the purpose of its summary judgment motion, that AD 3.72 substantially burdened Balawajder's free exercise of religion. However, the Department now asserts for the first time on appeal that "Balawajder cannot show that [AD 3.72] substantially burden[s] his religious exercise" because of a recently decided Fifth Circuit case that provides a standard for determining whether a person is substantially burdened. *See Adkins*, 393 F.3d at 570.[8] We cannot consider the Department's new assertion because it was not asserted as a summary judgment ground, and thus the Department's summary judgment did not challenge Balawajder's claim that AD 3.72 substantially burdened his free exercise of religion. *See Lopez*, 22 S.W.3d at 862; *see also McConnell*, 858 S.W.2d at 340.

## B. Compelling Governmental Interest

Balawajder contends that he presented sufficient evidence to rebut the presumption that favors AD 3.72. Balawajder asserts that the Department allows extra storage space for legal and educational materials as exceptions to AD 3.72 and that the Department, therefore, does not have a compelling interest in denying him that same type of storage space to maintain "good order, security and discipline, consistent with consideration of costs and limited resources." *See Diaz*, 114 F.3d at 73.

First, we determine whether Balawajder's summary judgment evidence rebuts the presumption that AD 3.72 furthers the compelling governmental interests in the least restrictive means. Second, if Balawajder rebuts this presumption, we must further consider whether the Department's summary judgment evidence proves that AD 3.72 furthers compelling governmental interests in the least restrictive means.

The Department's motion for summary judgment asserts that the compelling interests in restricting the amount of storage space were (1) "limiting the amount of property an inmate may possess," (2) "not awarding any inmate special privileges or preferential treatment," and (3) "allowing

---

8. The Fifth Circuit held in *Adkins* that under RLUIPA, "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." 393 F.3d at 570. "[T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Id.* A government action or regulation, however, "does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id.*

prison chaplains to perform their normal duties attending to prisoner's spiritual needs, rather than processing inmate requests for more storage space and making individual determinations about which inmates get how much space, and dealing with inmate complaints over this issue." We are thus limited to considering only the grounds for summary judgment presented to the trial court by the Department. *See Lopez,* 22 S.W.3d at 857 (holding court of appeals cannot consider issues on appeal from summary judgment that movant did not present to trial court); *McConnell,* 858 S.W.2d at 340.

The Department attached two affidavits as its summary judgment evidence. The first affidavit contains the minutes of the Religious Practice Committee, with its summary recommendation that

> [w]e have a compelling governmental interest in denying this demand. [Balawajder] has access to books that he can provide for himself up to the limit set by property rules. We are in compliance with the requirement to respond in the least restrictive way possible. Therefore, his request should be denied. Chaplaincy will respond to the free-world petitioners and to the offender with specifics about the denial.

9. The Department asserts compelling interests in its brief, stated in the policies and procedures section of AD 3.72, in "reducing fire hazards, reducing security risks, and reducing sanitation problems related to offender property." Notwithstanding the fact that these compelling interests were not raised in the Department's motion for summary judgment, we note that these concerns would arise regardless of the content of the books possessed by inmates—whether that content includes legal, educational, religious or other materials. Furthermore, we note that evidence of a generalized interest in "health and safety" is not sufficient evidence that a prison regulation furthers a compelling governmental interest.

■ The second affidavit, executed by Don Kaspar, the Director of the Chaplaincy Department at the Department, states the following:

> If Mr. Balawajder is allowed to have extra storage space for his religious materials, either in his cell or in the Chaplain's office, then every other offender may wish to have the same privilege. If Mr. Balawajder is given extra space for his property, other offenders will perceive that he is receiving special privileges and preferential treatment. Additionally, reviewing every request for additional space for religious materials would take up a great deal of [the Department] chaplains' time which would be better spent on regular duties.
>
> This policy has nothing to do with Mr. Balawajder's Hare Krishna faith. Christians, Muslims, Jews, and practitioners of all other religions are treated the same way. No·offender is given extra storage space to store religious property for the reasons listed above.

The Department's meager summary judgment evidence does not address the specific burdens that would be imposed by reviewing requests for additional space, nor does it address AD 3.72's exceptions that allow additional storage space for legal and educational materials.[9]

*See Johnson v. California,* 543 U.S. 499, 507–08, 125 S.Ct. 1141, 1147–48, 160 L.Ed.2d 949 (2005) (holding generalized interest of prison racial-segregation policy in preventing violence insufficient to preclude individualized determinations of whether prison security would be breached by particular inmates); *Jolly v. Coughlin,* 76 F.3d 468, 479 (2d Cir. 1996) (holding that prison policy was not insulated from scrutiny merely because State "brandish[ed] the concepts of public health and safety" and that "connection between the application of a policy to an individual and the furtherance of the government's goals must be clear").

 Balawajder responds to the Department's claim that it has a compelling interest in limiting the amount of inmates' property by noting that AD 3.72 allows exceptions for extra storage space for *legal* and *educational* materials. Undisputed evidence shows that the Department allows additional storage space for "educational materials related to college course work which has been validated/approved ... for the duration of the course." Additional storage space is also authorized for legal materials if the "first closable storage container is totally filled with legal materials, current educational materials, and a reasonable amount of other personal property items." AD 3.72 does not limit the number of additional storage containers allowed for legal and educational materials so long as the prisoner demonstrates compliance with the requirements allowing for these exceptions. Balawajder contends that these exceptions are evidence that the Department does not have a compelling interest to limit his storage space for *religious* materials in a manner different from legal or educational materials.[10]

The Department asserts that because the exception for additional storage for legal and educational materials is temporary, it "has no bearing on the necessity of unbending restrictions on the amount of permanent storage space to which each offender is entitled." Although the Department contends that the exceptions for additional storage space are temporary and thus distinguishable from Balawajder's request for additional space for religious material, the record shows that the additional storage space may be temporary or ongoing. Specifically, additional storage space for educational materials is allowed while an inmate is taking educational courses, but the Department imposes no limit on the length of time that an inmate is allowed to take courses. Furthermore, an inmate is allowed additional storage space for legal materials as long as a continued need for such materials is present.[11]

 Balawajder also challenges the Department's claim that it has a compelling interest in not awarding any inmate special privileges or nonuniform treatment. Balawajder's opposition to the Department's motion for summary judgment sets forth the following examples of nonuniform treatment of certain inmates by the Department, among others:

- Additional storage boxes provided for legal materials, including seven storage boxes provided to Balawajder for legal materials only;
- Muslim prisoners excused from work on Fridays from noon to three p.m.;
- Only Christian prisoners assigned to the Department's Carroll Vance Unit of the prison;

10. The Department cites an Eight Circuit case upholding a 25–books–per–cell ordinance to support its position that it properly limited the amount of space allotted to Balawajder for his religious books. *Weir v. Nix*, 114 F.3d 817, 821–22 (8th Cir.1997). We note, however, that the ordinance at issue in *Weir* did not differentiate among written materials based on content. *See id.* In other words, the 25 book limit applied to all books, with no exceptions for certain types of books, whereas here, prisoners are allowed to have extra space for legal and educational materials but not for religious materials. *See id.*

11. Thus, in the instant case, Balawajder is allowed his religious material as part of his legal work for this case as long as the case is ongoing, but that privilege terminates upon final disposition of this case. The Department has provided no evidence to justify a distinction between prisoner regulations permitting access to legal and educational materials not otherwise available to inmates while denying access to religious materials not otherwise available to inmates.

- Special kosher diets given to Jewish prisoners; and
- Native American prisoners allowed to participate in sweat lodges.

Balawajder asserts, therefore, that these exceptions are evidence that the Department does not have a compelling interest in treating all inmates uniformly with respect to religious practices.

■ Lastly, Balawajder challenges the Department's claim that the exception proposed by him would cause an administrative burden on prison chaplains. Pursuant to AD 3.72, the law library supervisor must review and document the continued need for additional storage space for legal materials at least every 90 days. Balawajder contends that the administrative burden on the chaplain would be no different than the administration of legal materials and thus that the Department does not have a compelling interest in relieving the administrative burden on chaplains. By demonstrating that the exceptions under AD 3.72 allow prisoners to acquire additional storage containers for legal and educational materials, Balawajder raised more than a scintilla of evidence to rebut the presumption that limiting inmates' storage space differently than that for legal or educational material furthers the Department's compelling interest in maintaining good order, security, and discipline, because it rebuts the Department's contention that it must treat all prisoners uniformly with respect to storage space. *See Diaz*, 114 F.3d at 73.

■ We conclude that in response to the Department's motion for summary judgment, Balawajder presented sufficient evidence to raise a fact question as to whether AD 3.72 furthers the Department's compelling interests in limiting storage space for books, preventing nonuniform treatment to prisoners, and restricting the administrative burden on chaplains. The evidence presented by Balawajder shows that the exceptions under AD 3.72 allow nonuniform treatment to prisoners who need legal and educational materials and that other nonuniform treatment is given to specific inmates for various reasons. Certainly, we do not intend to imply that Balawajder is entitled to "a large and continually expanding Hare Krishna religious reference library," as the Department suggests. By creating exceptions for legal and educational materials and other religious practices, however, the Department did not prove as a matter of law that prisoners are subject to uniform limitations on the volume of personal property they may possess. Though the Department may ultimately prevail in establishing that its regulation furthers a compelling interest in the least restrictive means, it did not offer conclusive evidence, here, once Balawajder rebutted the statutory presumption.

Additionally, by demonstrating that the law library supervisor is required by AD 3.72 to review and document the continued need for additional storage space for legal documents every 90 days, Balawajder presented evidence that raises a fact question regarding whether the Department has a compelling interest in relieving chaplains from the administrative burden of processing inmate requests for additional storage space. Specifically, the Department did not show how this administrative function would be unduly burdensome compared to the law library supervisor's administrative burden of reviewing the continued need for legal documents every 90 days. We conclude, therefore, that Balawajder produced more than a scintilla of evidence to rebut the presumption that favors AD 3.72, and thus the burden shifted to the Department.

Because Balawajder succeeded in shifting the burden back to the Department,.

the Department bears the ultimate burden of proving that enforcing AD 3.72 to prevent Balawajder from having extra storage space for his religious materials furthers a compelling governmental interest in the least restrictive means. *See Adkins,* 393 F.3d at 567 & n. 32. To affirm the summary judgment here, therefore, the record would have to show that the Department conclusively proved as a matter of law that enforcing AD 3.72 to prevent Balawajder from having extra storage space for his religious materials furthers a compelling governmental interest in the least restrictive means. *See* Tex.R. Civ. P. 166a(c); *Adkins,* 393 F.3d at 567 & n. 32. The Department, however, did not present conclusive evidence to demonstrate compelling interests in (1) not allowing additional storage space for religious materials to the extent that it allows additional storage space for legal and educational materials, and (2) preventing the administrative burden on prison officials to determine whether inmates need additional storage space for religious materials when they are burdened with such a determination for legal and educational materials.

Furthermore, although Balawajder rebutted the presumption that favors A.D. 3.72, we conclude that he did not conclusively establish that A.D. 3.72 violates TRFRA because the following fact questions remain: (1) whether the Department has a compelling interest in not allowing additional storage space for religious materials to the extent that it allows additional storage space for legal and educational materials, and (2) whether the Department has a compelling interest in preventing the administrative burden of determining the eligibility of inmates for additional space for religious materials. Because there are fact questions regarding the Department's compelling interests and the least restrictive means to achieve such interests, we sustain the portion of Balawajder's issues one through 13 and 15 that contend the trial court erred by granting summary judgment in favor of the Department, overrule those portions that contend the trial court erred by not granting summary judgment in favor of Balawajder, and need not address Balawajder's constitutional complaints. *See Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999) (stating that courts of appeals do not consider constitutional challenges that can be disposed of on nonconstitutional grounds).

### Conclusion

We reverse the summary judgment entered by the trial court and remand this case for proceedings not inconsistent with this opinion.