# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3283

_____

EVERETT R. LYON,      *
    *
      Plaintiff-Appellee,     *
    *
   v.     *   Appeal from the United States
    *   District Court for the
DEL VANDE KROL; PAUL     *   Southern District of Iowa.
HEDGEPETH; JAMES HELLING;     *
RABBI JACOBSON,     *
    *
      Defendants-Appellants.     *

_____

Submitted:   May 16, 2001
Filed:   November 2, 2001

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT and BYE, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Everett R. Lyon ("Lyon"), an inmate at the Iowa State Penitentiary ("ISP"), brought a civil rights action against ISP officials claiming his constitutional rights were violated because his right to practice the Jewish religion was limited. After preliminary matters relating to the constitutionality of 28 U.S.C. § 1915(g) were resolved, the matter was remanded for trial. A jury entered a verdict against the ISP officials, awarding Lyon nominal damages, punitive damages and injunctive relief.

The ISP officials appeal. We remand for further proceedings for reasons stated in this opinion.

I.    BACKGROUND

Lyon is an inmate at the ISP. Vande Krol is the ISP chaplain. Rabbi Jacobson previously served as the ISP's on-site Jewish consultant and presently serves as an unpaid consultant. In late 1995 and early 1996, Chaplain Vande Krol observed that a large number of inmates who professed to be Jewish were abusing the special food privileges they were given for the Jewish holidays. Vande Krol notified Rabbi Jacobson of the problem and sent him a draft of a memo excluding all but four inmates from the ISP Jewish community.

On February 13, 1996, a memo bearing Rabbi Jacobson's signature was sent to the ISP Jewish community limiting the inmates who would be allowed to participate in Jewish activities. The memo identified two criteria whereby inmates could be considered "sincerely Jewish": (1) show proof of their prior participation/background of Judaism to the Jewish consultant; or (2) fall under a grandfather clause to include those inmates who have been continuously and consistently in attendance of Jewish Sabbath services for the three previous years and have shown a sincere, committed sense of belief in the Judaic faith. The memo identified four inmates who would be allowed to participate in the ISP Jewish life. Lyon was not included in the list.

On March 14, 1996, Vande Krol sent a memo to inmates on the Jewish chapel list at the ISP. The memo explained that Vande Krol received a letter from Rabbi Jacobson and that only four inmates would be allowed to participate fully in the ISP's Jewish life. For others who wished to participate, Vande Krol directed the inmate to "verify his Jewish background to the satisfaction of the Jewish consultant." Those who wished to convert to Judaism were instructed to complete a two-year course of

study under the direction of the Jewish consultant. There is no evidence that the two-year study course was ever made available to the ISP inmates.

On March 18, 1996, Lyon sent an inmate memo to Vande Krol explaining that he had been a member of the Jewish community for the three years necessary to be included on the list of inmates allowed to participate in Jewish activities. Lyon went on to request kosher food for celebrating Passover. Vande Krol responded by telling Lyon that,

> the Jewish rabbi has made this recommendation to ISP due to the abuses that were taking place. I do not control the Jewish community, but see to it that recommendations made by consultants to ISP are administered. (While I had no input into the choice of the four, I understand it took into account Jewish background, etc.)

App. at 101.

On May 30, 1996, Lyon sent another inmate memo, in his words, "attempting an informal resolution of a grievance." Again Lyon asserted the right to practice his Jewish faith. Deputy Warden Paul Hedgepeth's response read: "You are permitted to attend the Jewish service. The experts suggest STUDY, attend service but do not participate, & the kosher food issue is not relevant. The experts also say no one should be converted to Judism [sic] while in prison." App. at 102 (emphasis in original).

Lyon maintains that he regularly attended Jewish services from 1992 to March 1996 (when the ISP authorities excluded him from religious services) and that after March 1996 the ISP violated his First Amendment right to freedom of religion by prohibiting his participation in the ISP Jewish life.

The district court denied the ISP officials' motion to dismiss, denied the ISP officials' motion for summary judgment, and tried the case to a jury; the jury entered a verdict against the ISP officials, awarding Lyon nominal damages, punitive damages, and injunctive relief. The district court denied the ISP officials' motion for judgment as a matter of law and their motion for a new trial. The district court upheld the jury's nominal damages award, reversed the jury's punitive damages award against the former and present ISP wardens, and reduced the punitive damages award against Vande Krol from $100,000 to $30,000. Lyon obtained one dollar in nominal damages against Vande Krol, Helling, and Hedgepeth, and, as previously mentioned, $30,000 punitive damages against Vande Krol. The district court also granted injunctive relief directing ISP officials to allow Lyon access to Jewish artifacts, services, and kosher food. The ISP officials appeal.

II.     DISCUSSION

The district court had jurisdiction under 28 U.S.C. § 1343. We have jurisdiction under 28 U.S.C. § 1291. The defendants' notice of appeal was timely filed.

We review the district court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (citing Paramount Pictures Corp. v. Metro Program Network, Inc., 962 F.2d 775, 777 (8th Cir. 1992)).

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

-4-

The district court recognized that the courts considering the Prison Litigation Reform Act's exhaustion requirements have reached different conclusions. The district court weighed the conflicting case law and determined that § 1997e(a)'s exhaustion requirements were excusable. The court first explained that, as it had ruled in other cases, § 1997e(a) is not jurisdictional and exhaustion under this section can be excused if a viable remedy is unavailable.

After concluding that Lyon did not exhaust his administrative remedies at ISP, the district court chose to excuse his failure. The court stated that administrative remedies were not available to Lyon and gave a number of justifications for this conclusion, including: (1) dismissal would unduly prejudice Lyon's ability to file another court action (because the ISP officials raised their exhaustion claim late in the game and because the statute of limitations was running); (2) the court had already invested a significant amount of time and energy in the case; (3) the inability of other inmates to convince ISP officials to change their policy; and (4) Lyon's complaint sought monetary relief, which was not provided for by the prison's administrative procedure.

Upon review, it is clear that the district court's consideration of Lyon's request for monetary relief is no longer appropriate under Booth v. Churner, 121 S. Ct. 1819, 1822-25 (2001). In Booth, the Supreme Court held that if a prison administrative procedure has authority to take some action in response to an inmate's grievance, the Prison Litigation Reform Act requires exhaustion even if the claim is solely for monetary damages and monetary damages are not available in the administrative proceeding. Booth makes it plain that exhaustion is required where prison administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought.

The question of whether administrative remedies were available to Lyon in this matter, however, is not an issue readily addressed by reference to Booth. In his initial

brief and in supplemental briefing on the applicability of Booth to this case, Lyon argues that Vande Krol's response to his March 18 memo led him to believe that the decision to exclude him from the list of Jewish inmates was not a prison decision that was grievable, but a decision of the Jewish consultant, for which Lyon had no recourse. In effect, Vande Krol told him that no remedy was available through ISP procedures because the decision was made by the Jewish rabbi and the matter was out of Vande Krol's hands.

Lyon's argument that his complaint was not grievable through ISP administrative procedures is bolstered by Hedgepeth's May 30 memo referring to the suggestions and views of Jewish "experts" in response to Lyon's effort to reach an informal resolution of the grievance. Lyon maintains that no further administrative proceedings were available to him after Vande Krol stated the decision was not his and Hedgepeth also implied the decision-making authority on this issue lay with non-ISP officials.

If Lyon was prevented from exhausting his administrative remedies by ISP officials who never responded to his complaints directly, then this case falls into the line of recent Eighth Circuit cases where an inmate cannot be held to the § 1997e(a) exhaustion requirement because there were no "available" proceedings. See Foulk v. Charrier, No. 00-1132, 2001 WL 930556 (8th Cir. Aug. 17, 2001) (finding the district court lacked sufficient factual basis to find Foulk failed to exhaust where prison officials failed to respond to Foulk's informal resolution request [the first of three steps in the prison's grievance process]); Miller v. Norris, 247 F.3d 736 (8th Cir. 2001) (finding Miller was prevented from utilizing available remedies by prison officials who failed to respond to requests for grievance forms).

The exhaustion issue remains open. We cannot reach the merits or dismiss until that issue is resolved. Thus, we remand to the district court for an evidentiary hearing to determine whether Lyon was prevented from exhausting ISP administrative

proceedings by ISP officials. See Miller, 247 F.3d at 740 (citing to Johnson v. Garraghty, 57 F. Supp. 2d 321, 329 (E.D.Va. 1999) for the proposition that determining whether a prisoner plaintiff was prevented from exhausting remedies requires an evidentiary hearing to decide whether remedies were "available"). On remand the district court will determine whether Lyon shall be held to or relieved of the exhaustion requirement under § 1997e(a) and rule whether the judgment previously entered in the case shall remain or whether the action shall be dismissed without prejudice for failure to exhaust.

## III.    CONCLUSION

For the foregoing reasons, we retain jurisdiction but remand this matter to the district court for further proceedings, on an expedited basis, consistent with this opinion.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I believe that the judgment in this case should be reversed because Mr. Lyon did not exhaust his administrative remedies. With respect, I can find no justification for the court's view that such remedies were not available within the meaning of the statute because Mr. Vande Krol somehow misled Mr. Lyon. If Mr. Vande Krol had told Mr. Lyon that there was no grievance procedure, or had refused to furnish him with available forms, we would have a different case. But here, taking Mr. Lyon's allegations at face value, there was merely a denial of responsibility on Mr. Vande Krol's part, not a statement that no grievance procedure was available to determine whether that was true or to undo what "Jewish experts" had allegedly done. Indeed, it is quite plain that there was such a procedure, that Mr. Lyon knew it, and that he was not denied access to it. At most, Mr. Vande Krol's statement was a prediction that Mr. Lyon would lose if he filed a grievance, but this does not mean that a grievance procedure was not available to him. Mr. Lyon therefore cannot be

relieved of the responsibility of pursuing that procedure or of the consequences of failing to do so.

I therefore respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.