# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3283

_____

| | | |
|---|---|---|
| Everett R. Lyon, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Southern |
| Del Vande Krol; Paul | * | District of Iowa. |
| Hedgepeth; James Helling; | * | |
| Rabbi Jacobson, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:  April 17, 2002

Filed: October 4, 2002

_____

Before  MCMILLIAN, BRIGHT, BOWMAN, WOLLMAN, LOKEN, MORRIS
     SHEPPARD ARNOLD, MURPHY, BYE, RILEY, and MELLOY, Circuit
     Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Everett Lyon, an inmate at the Iowa State Penitentiary (ISP), brought this civil rights suit under 28 U.S.C. § 1983 against ISP officials, claiming that the prison's exclusion of him from participating in Jewish services and holidays violated his constitutional rights.  Although Mr. Lyon had previously filed four civil rights

complaints that had been dismissed as frivolous, the district court refused to dismiss his complaint as the so-called "three-strikes provision" of 28 U.S.C. § 1915(g) required because it concluded that the statute was unconstitutional. *See Lyon v. Vande Krol*, 940 F. Supp. 1433 (S.D. Iowa 1996). On appeal from this order, we remanded the case to the district court with instructions to order Mr. Lyon to pay a filing fee or suffer the dismissal of his suit. *See Lyon v. Vande Krol,* 127 F.3d 763, 766 (8th Cir. 1997). Mr. Lyon then paid his fee, the case went to trial, the jury rendered a verdict awarding him nominal and punitive damages, and the district court ordered injunctive relief in his favor.

When the ISP officials appealed asserting, *inter alia*, that Mr. Lyon's suit should have been dismissed because he had failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a), a panel of our court remanded the case to determine whether the officials had prevented Mr. Lyon from exhausting those remedies. *See Lyon v. Vande Krol,* 270 F.3d 563, 567 (8th Cir. 2001). We then granted the ISP officials' petition for a rehearing *en banc*. We now reverse the judgment of the district court.

I.

As an initial matter, Mr. Lyon maintains that the ISP officials have forfeited the right to argue that he did not exhaust his administrative remedies because they did not raise that issue in the district court at the first opportunity. We disagree. Although the district court ordered service of process on the ISP officials prior to the first appeal in this case, it entered a stay, pending appeal, of all proceedings in the district court before the ISP defendants were required to respond to the complaint. After we remanded the case and Mr. Lyon's fee-paid complaint was allowed to proceed, the ISP officials timely filed their motion to dismiss asserting that Mr. Lyon had not exhausted the administrative remedies available to him at ISP. Because the ISP officials raised the exhaustion issue at the first opportunity they have not waived their right to raise it here. We therefore turn to the merits of that argument.

## II.

The prison's chaplain, defendant Del Vande Krol, testified that he had come to believe that a large number of inmates professed to be Jewish solely for the purpose of taking advantage of the special food accommodations made for Jewish inmates. In an effort to curtail this alleged abuse, defendant Rabbi Joseph Jacobson, a Jewish consultant for the prison, signed a memo drafted by Mr. Vande Krol excluding all but four inmates of ISP (of whom Mr. Lyon was not one) from participating in the Jewish services.

When Mr. Lyon protested his exclusion, Mr. Vande Krol responded by informing him that he had merely fulfilled his obligation to see to it that the recommendations of Rabbi Jacobson, as Jewish consultant to ISP, were implemented at the prison. Mr. Lyon then wrote a memo attempting to resolve the issue informally. Deputy Warden Paul Hedgepeth, another defendant, responded to the memo by informing Mr. Lyon that, although he would be permitted to attend Jewish services, he would not be allowed to participate. Mr. Hedgepeth went on to explain to Mr. Lyon that "Jewish experts" suggested that prison inmates should not be converted to Judaism and that, in lieu of conversion, Mr. Lyon should simply engage in a course of Jewish study.

The Prison Litigation Reform Act of 1996 (PLRA) amended 42 U.S.C. § 1997e(a) to require that inmates who have civil rights claims must first exhaust all administrative remedies before bringing an action under § 1983. *See Booth v. Churner*, 532 U.S. 731, 733-34 (2001). This is true even though relief of the sort that the plaintiff is seeking is not available through the administrative procedures that are available. *Id.* at 737-41.

Mr. Lyon admits that there is a prison grievance procedure at ISP that provides a means to consider his constitutional claim and that he did not comply with it. He says, however, that he did not pursue the procedure because Mr. Vande Krol told him

that the decision to exclude him from participating in the ISP Jewish community was not Mr. Vande Krol's to make and because Mr. Hedgepeth implied that the decision to exclude prisoners from participation rested in the hands of "Jewish experts" and not with ISP officials. Mr. Lyon maintains, in essence, that administrative remedies were not "available" within the meaning of the relevant statute because Mr. Vande Krol and Mr. Hedgepeth prevented him from exhausting them.

It is true that we have held that inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies. For instance, in *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001), we concluded that the district court lacked a sufficient factual basis to find that an inmate had failed to exhaust his administrative remedies when prison officials had refused to respond to his informal resolution request that he completed to satisfy the requirements of the first part of the prison's three-part grievance process. In *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001), we similarly held that an inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms, and that the inmate's failure to exhaust those remedies was not a bar to suit because they were not "available" to him.

Though it is the burden of the defendant in a case such as this to show that a plaintiff prisoner failed to exhaust all available administrative remedies under the PLRA, it is not disputed in this case that Mr. Lyon did not exhaust them. Under the PLRA, *Booth*, 532 U.S. at 737-41, and all other applicable law, the question is a simple one: Was there a procedure available? There is no question in this case that there was, that Mr. Lyon was aware of it, and that he chose not to follow the steps that the procedure outlined. Mr. Lyon was never told that there was not a procedure, moreover, so there is no basis for the application of an estoppel principle here, even if one might otherwise be available.

The statement made to Mr. Lyon by Mr. Vande Krol that the decision to exclude Mr. Lyon from the Jewish services was made by an outside party to whom the prison would defer in that decision, was, at best, a prediction that Mr. Lyon would lose if he complained through the administrative grievance procedure. It was not a denial of Mr. Lyon's right to complain, nor could the statement have misled him about the availability of the procedure. Similarly, the reference by Mr. Hedgepeth to "Jewish experts" implied that ISP officials were deferring to the judgment of others in their decision-making process, but it cannot in any event have changed the fact that procedures were available to Mr. Lyon through which he could claim that his constitutional rights had been violated. It does not matter, finally, that Mr. Lyon may have subjectively believed that there was no point in his pursuing administrative remedies: We made it clear in *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), *cert. denied*, 531 U.S. 1156 (2001), that § 1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are "available."

## III.

For the reasons indicated, we believe that Mr. Lyon must first have exhausted his administrative remedies pursuant to the grievance procedure of the prison before his civil rights complaint could proceed. He did not do so. We therefore reverse the judgment of the district court and remand the case with directions to dismiss the complaint.

BRIGHT, Circuit Judge, with whom McMILLIAN, Circuit Judge, joins, dissenting.

I respectfully dissent from the majority's opinion in this case for several reasons. The majority overstates the holding of Booth v. Churner, 532 U.S. 731 (2001), and in so doing asks the wrong question about Lyon's failure to exhaust. Secondly, the majority opinion disagrees with a vacated panel opinion that rested on the most narrow grounds and would have remanded to the district court for crucial

fact-finding and reconsideration in light of new Supreme Court rulings on PLRA exhaustion that were not available to the trial judge when he ruled on these matters. Finally, the opinion ignores the significant expenditure of time and resources spent on a six-year-old case in which there already exists a jury verdict, injunctive relief, and an award of damages.[1] Essentially, we are now telling the parties to start all over from square one based on a non-jurisdictional failure to exhaust, the facts of which have never been fully developed. Moreover, the ruling announced in Booth is undergoing development in the courts and is not necessarily dispositive of the case before us.

According to the majority, Booth and the PLRA mandate that the resolution of this case lies in answering one question: Was there a procedure available? In the majority's view, ISP did have a prison grievance procedure, Lyon knew about the procedure, ISP officials never told Lyon there was not a procedure, and no statements made by ISP officials could have misled Lyon about the availability of the procedure.

Unfortunately, the question asked by the majority is not properly tailored to the facts of this case, nor is it a correct inquiry under the case law. Of course there was a grievance system; Lyon availed himself of this system initially. Thus Lyon certainly knew about it. The ISP officials did not tell him that this grievance system did not exist; the ISP officials knew the system existed and was in place. What the ISP officials may have done, and the *may* is critical here because it reveals the factual uncertainty of this case, is prevent Lyon from exhausting his administrative remedies

---

[1]The district court upheld the jury's nominal damages award, reversed the jury's punitive damages award against the former and present ISP wardens, and reduced the punitive damages award against Vande Krol from $100,000 to $30,000. Lyon obtained one dollar in nominal damages against Vande Krol, Helling, and Hedgepeth, and, as previously mentioned, $30,000 punitive damages against Vande Krol. The district court also granted injunctive relief directing ISP officials to allow Lyon access to Jewish artifacts, services, and kosher food.

by creating the impression that his claims were not grievable through the ISP grievance system. According to Lyon, the officials' comments and actions sent a clear message: the ISP grievance system does not have the authority to address your complaint, only the Jewish consultant has the power to resolve such grievances. This is precisely the matter on which the first panel opinion sought factual clarification.

The information we do have suggests that Lyon could have been misled by ISP officials. On March 14, 1996, Vande Krol sent a memo to inmates on the Jewish chapel list at the ISP. The memo explained that Vande Krol received a letter from Rabbi Jacobson and that only four inmates would be allowed to participate fully in the ISP's Jewish life.[2] For others who wished to participate, Vande Krol directed the inmate to "verify his Jewish background to the satisfaction of the Jewish consultant." Four days later, Lyon sent an inmate memo to Vande Krol explaining that he had been a member of the Jewish community for the three years necessary to be "grandfathered" onto the list of inmates allowed to participate in Jewish activities. Lyon went on to request kosher food for celebrating Passover. Vande Krol responded by telling Lyon:

> [T]he Jewish rabbi has made this recommendation to ISP due to the abuses that were taking place. I do not control the Jewish community, but see to it that recommendations made by consultants to ISP are administered. (While I had no input into the choice of the four, I understand it took into account Jewish background, etc.)

On May 30, 1996, Lyon sent another inmate memo, in his words, "attempting an informal resolution of a grievance." Again Lyon asserted the right to practice his Jewish faith. Deputy Warden Paul Hedgepeth's response read: "You are permitted to attend the Jewish service. The experts suggest STUDY, attend service but do not

---

[2]At trial in this case, it came to light that Vande Krol himself had drafted the memo excluding all but four inmates and then asked Rabbi Jacobson to sign it.

-7-

participate, & the kosher food issue is not relevant. The experts also say no one should be converted to Judism [sic] while in prison." (emphasis in original).

The majority construes Vande Krol's response as "at best, a prediction that Mr. Lyon would lose if he complained through the administrative grievance procedure," and it interprets Hedgepeth's comment as implying that ISP officials "were deferring to the judgment of others in their decision-making process, but it cannot in any event have changed the fact that procedures were available to Mr. Lyon." This interpretative gloss on the administrative record would be entirely appropriate if the en banc court were charged with deciphering facts, but such is not the case. Rather, this appeal poses the question of whether the district court erred in excusing Lyon's failure to exhaust. I believe we have strayed from this inquiry.

Judge Longstaff, an able and experienced district judge, considered the prison officials' failure to exhaust argument and excused the non-exhaustion on several grounds: (1) the money damages that Lyon sought were unavailable through the ISP grievance procedure; (2) several other inmates were unable to convince prison officials to change the policy; (3) "requiring exhaustion now would result in undue prejudice to subsequent assertion of a court action"; and (4) the parties and the court have already invested significant resources into the (then) three-year-old case. After Booth, the first reason offered by the district court is no longer valid and the second reason likely can be viewed as a futility exception, which most circuit courts have rejected as an excuse for failure to exhaust. However, the third and fourth reasons presented by the district court may not be foreclosed by Booth. 532 U.S. at 741 n.6 ("Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The majority opinion makes no mention of these two factors.

Moreover, the majority's reliance on Booth does not withstand scrutiny. The Supreme Court began its analysis in Booth by pointing out that neither party "argues

-8-

that exhaustion is required where the relevant administrative procedure lacks authority to provide any relief or take any action whatsoever in response to [the] complaint." Id. at 736. Having stated this, the Court considered whether an inmate plaintiff is held to the exhaustion requirement when "the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress." Id. This is the issue the Court resolved. The Booth Court did not address situations where prison officials deliberately create the impression that the administrative process has no authority to take action in response to a complaint. We now face this question, and it was not decided by Booth.

The Booth Court did conclude that amendments to § 1997e(a) "eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be 'plain, speedy, and effective' before exhaustion could be required." Id. at 739. Exhaustion in cases covered by § 1997e(a) is now mandatory. See Porter v. Nussle, 122 S. Ct. 983, 988 (2002) (citing Booth). However, Booth may not have foreclosed all possibilities that mandatory exhaustion can be *excused* by a district court. For example, McCarthy v. Madigan, 503 U.S. 140, 146-49 (1992), allowed "three broad sets of circumstances" under which administrative exhaustion may be excused: (1) where requiring exhaustion would create undue prejudice to subsequent assertion of a court action; (2) as Booth acknowledged, where the agency lacks institutional competence to resolve the type of issue presented; and (3) where the administrative body is shown to be biased or has otherwise predetermined the issue before it. The power of a district court to excuse administrative exhaustion under rare circumstances is supported by the fact that this circuit has held that § 1997e(a) is not jurisdictional. See Foulk v. Charrier, 262 F.3d 687, 696 (8th Cir. 2001) (citing Chelette v. Harris, 229 F.3d 684, 686-88 (8th Cir. 2000)).

Under an objective test, if prison officials prevent prisoners from exhausting their claims by making it appear that the prison has no available administrative

procedures for handling the prisoner's claim, excusing the exhaustion requirement might yet be an option. In <u>Porter v. Nussle</u>, the Supreme Court explained that Congress' intent in enacting § 1997e(a) was to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." 122 S. Ct. at 988. If prison officials refuse to avail themselves of this opportunity and mislead inmates as to their authority to resolve grievances, excuse of administrative exhaustion may be an appropriate remedy.

In the instant matter, the district court determined that Lyon would face "undue prejudice to subsequent assertion of a court action" if exhaustion were not excused. The court also explained how significant resources had been expended on the case. The en banc court now reverses the district judge without fully addressing his ruling or considering it in relation to relevant binding precedent.

Because there are underlying mixed questions of fact and law that need to be resolved before the applicability of <u>Booth</u> can be determined, the original panel was correct in its decision to remand the matter to the district court for preliminary consideration. In the rush to resolve this case on procedural grounds, the en banc court has done both the district court and Lyon a great disservice. I reiterate that a final resolution of the case rests on an incomplete factual record, and an application of a Supreme Court decision that may not apply to a fully developed record. The rush to judgment here is unseemly and unfair to the parties, the district court, and to the law. Thus I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.