**Jonathon B. JOHNSON, Plaintiff**

v.

**Zane BOYD, Administrator, Crittenden County Detention Center, et al., Defendants.**

**No. 3:08CV00084 SWW/JTR.**

United States District Court, E.D. Arkansas, Jonesboro Division.

Dec. 15, 2009.

Jonathan B. Johnson, Grady, AR, pro se.

Jeremy Michael Clifford McNabb, Janan Arnold Davis, Rainwater, Holt & Sexton P.A., Little Rock, AR, for Defendants.

### ORDER

SUSAN WEBBER WRIGHT, District Judge.

The Court has reviewed the Proposed Findings and Recommended Partial Disposition submitted by United States Magistrate Judge J. Thomas Ray and the filed objections. After carefully considering these documents and making a *de novo* review of the record in this case, the Court concludes that the Proposed Findings and Recommended Partial Disposition should be, and hereby are, approved and adopted in their entirety as this Court's findings in all respects.

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment (docket entry # 76) is GRANTED IN PART, and DENIED IN PART, such that: (a) Plaintiff shall PROCEED with his failure to protect and free exercise of religion claims against Defendants in their *individual capacities only;* and (b) all other claims are DISMISSED, WITH PREJUDICE.

2. The Court CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), than an *in forma pauperis* appeal from this Order would not be taken in good faith.

### PROPOSED FINDINGS AND RECOMMENDED PARTIAL DISPOSITION

J. THOMAS RAY, United States Magistrate Judge.

### INSTRUCTIONS

The following recommended partial disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Jonesboro Divisional Office
615 South Main, Room 312
Jonesboro, Arkansas 72401

## I. Introduction

Plaintiff, Jonathon B. Johnson, alleges in this *pro se* § 1983 action that Defendants

1. At all relevant times, Plaintiff was a convicted prisoner awaiting transport to the Arkansas Department of Corrections. *See* ADC Website, www.state.ar.us (providing that Plaintiff was convicted and sentenced on November 16, 2007).

2. The first claim is brought against Defendants Sheriff Richard Busby and Officer William Taylor. *See docket entries* # 2, # 8, # 11, and # 13. All of the remaining claims are brought against Defendants Busby, Ad-

violated his constitutional rights while was incarcerated at the Crittenden County Detention Center ("CCDC").[1] *See* docket entries # 2 and # 8. Specifically, he asserts that Defendants: (1) failed to protect him from being attacked by another inmate; (2) subjected him to inhumane and unsanitary conditions of confinement; (3) seized his Bible; (4) denied him phone, visitation, and mail privileges; and (5) failed to provide him with adequate medical care for asthma.[2] *Id.*

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts. *See* docket entries # 76, # 77, and # 78. Plaintiff has filed a sworn Declaration, a Response to the Motion for Summary Judgment, a Statement of Disputed Facts, and Exhibits. *See* docket entries # 79, # 80, # 81, and # 82.

For the following reasons, the Court recommends that: (1) Plaintiff be allowed to proceed with his failure to protect and free exercise of religion claims against Defendants, in their individual capacities only; and (2) all other claims be dismissed, with prejudice.

## II. Discussion

### A. Failure to Exhaust

Defendants argue that this case should be dismissed, without prejudice, because Plaintiff failed to exhaust his administrative remedies.[3] *See* docket entries # 76, # 77, and # 78. However, Defendants have not offered *any proof* in support of their exhaustion argument. *See Jones v.*

ministrator Zane Boyd, Chief Jailer Teresa Bonner, Sergeant Beasley, and Sergeant Mobley. *Id.*

3. The Prison Litigation Reform Act provides ("PLRA"), in pertinent part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

*Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (providing that an inmate's failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendants); *Nerness v. Johnson,* 401 F.3d 874, 876 (8th Cir.2005) (same).

Further, Plaintiff states in his verified Complaint that Defendant Bonner prevented him from exhausting his administrative remedies.[4] *See* docket entry # 2; *see also Sergent v. Norris,* 330 F.3d 1084, 1085–86 (8th Cir.2003) (explaining that the failure to exhaust administrative remedies will be excused if the prisoner demonstrates that the defendants hindered his efforts to complete exhaustion); *Lyon v. Vande Krol,* 305 F.3d 806, 808 (8th Cir. 2002) (explaining that "inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies"). Defendants have not responded, *in any way,* to that contention. Thus, the Court concludes that Defendants have not satisfied their burden of establishing their failure to exhaust defense.

### B. Failure to Protect Claim

■ Defendants argue that they are entitled to summary judgment on Plaintiff's failure to protect claim. As a threshold matter, the facts surrounding this claim are sharply disputed.

In his verified Complaint and sworn Declaration, Plaintiff alleges that, around 9:00 a.m. on November 30, 2007, Defendant Taylor purposefully unlocked the door to the cell that he was sharing with his cell mate, Glenn Bland. *See* docket entries # 2 and # 79. A few minutes later, inmate Antonio Wright opened the cell door and shot Plaintiff and Bland with a handgun he allegedly smuggled into the CCDC.[5] *Id.*

Defendants have provided the Court with scant information on what they believed transpired on the morning of November 30, 2007.[6] In their Statement of Undisputed Facts, Defendants state that Plaintiff and Bland told medical personnel that they did not know what had happened to them. *See* docket entry # 78. Additionally, Defendants explain that they found: (1) three "rounds" in the toilet and three "rounds" on the floor of Plaintiff's cell; and (2) a "Jennings J–22.22 caliber LR" handgun hidden in the CCDC shower area. *See* docket entry # 78 at ¶¶ 25–27.

*Although it is not discussed in their summary judgment papers,*[7] Defendants have produced an undated investigation

§ 1997e(a). Importantly, the Eighth Circuit has clarified that the PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim mentioned in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *See Johnson v. Jones,* 340 F.3d 624, 627 (8th Cir.2003); *Graves v. Norris,* 218 F.3d 884, 885 (8th Cir.2000).

4. The Eighth Circuit has held that a verified complaint, signed under penalty of perjury, is the equivalent of an affidavit for summary judgment purposes. *See Hanks v. Prachar,* 457 F.3d 774, 775 (8th Cir.2006); *Roberson v. Hayti Police Dept.,* 241 F.3d 992, 994–95 (8th Cir.2001).

5. The parties dispute whether Plaintiff was actually shot, or merely suffered some sort of superficial wound. *See* docket entries # 78, # 79, # 82. However, the severity of Plaintiff's injuries are not relevant to the resolution of the summary judgment motion.

6. Specifically, Defendant Taylor has *not* filed an Affidavit refuting Plaintiff's allegation that he purposefully opened the cell door so that Wright could enter the cell. Additionally, Defendants have *not* provided the Court with any incident reports, or affidavits from witnesses to the event. Similarly, Defendants have *not* explained whether an internal investigation was conducted or whether any criminal charges were filed.

7. *See Crossley v. Georgia–Pacific, Corp.,* 355

report prepared by Detective Voyles.[8] See docket entry # 78, Ex. 6. In that report, Detective Voyles notes that Wright, the alleged shooter, and several other witnesses claimed that: (1) Plaintiff, Wright, and Bland planned the shooting in an attempt to escape and/or obtain monetary damages from the CCDC; and (2) Defendant Taylor was not involved in the incident.[9] *Id.*

In contrast, Plaintiff and Bland told Detective Voyles that they were asleep when the shooting began, and that they had no idea who shot them. *Id.*

■■■ The United States Supreme Court has clarified that being assaulted by other inmates is not "part of the penalty that criminal offenders [must] pay for their offenses." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Thus, the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "take reasonable measures to guarantee" inmate safety by protecting them from attacks by other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, prison officials do not commit a constitutional violation every time one prisoner attacks another. *Young v. Selk,* 508 F.3d 868, 871 (8th Cir.2007); *Blades v. Schuetzle,* 302 F.3d 801, 803–04 (8th Cir.2002). Instead, to establish a failure to protect claim, a prisoner must demonstrate that: (1) objectively, there was a substantial risk of serious harm; and (2) subjectively, the defendants knew of and disregarded that substantial risk of serious harm. *Lenz v. Wade,* 490 F.3d 991, 995–996 (8th Cir.2007); *Crow v. Montgomery,* 403 F.3d 598, 601 (8th Cir.2005).

Defendants argue that they are entitled to summary judgment because they had no knowledge that Wright intended to harm Plaintiff, and that mere negligence in failing to detect the risk or prevent a gun from entering the CCDC is not a sufficient basis for imposing liability under § 1983.[10] *See* docket entry # 77. However, this argument misconstrues the nature of Plaintiff's claim, and the conflicting facts in the record.

Plaintiff states in his verified Complaint and sworn Declaration that Defendant Taylor purposefully opened the door to his cell so that Wright could shoot him.[11] In

---

F.3d 1112, 1113–14 (8th Cir.2004) (explaining that it is not the trial court's obligation when reviewing a summary judgment motion to sift through the record to find evidence to support for a party's position).

8. It is unclear for whom Detective Voyles worked.

9. According to the witnesses interviewed by Detective Voyles, Plaintiff, Wright, and Bland carefully "staged" the shooting to make it appear that employees of the CCDC had failed to protect Plaintiff and Bland by allowing Wright to obtain a firearm, while incarcerated at the CCDC, and then shoot Plaintiff and Bland in their cell. *See* docket entry # 78, Ex. 6.

These witnesses told Detective Voyles that Plaintiff faked a fall down the stairs at the CCDC on November 29, 2007, so that he could be taken to a local hospital where he retrieved a gun from Bland's girlfriend. *Id.*

The next day, on November 30, 2007, Plaintiff, not Wright, shot Bland while they were in the cell together. *Id.* Bland was then suppose to shoot Plaintiff, but the gun failed to fire. *Id.* To make it appear that Plaintiff had been shot, Bland was forced to cut Plaintiff in the back with a razor and stab him with a pen to simulate a gunshot wound. *Id.* Wright then exited the cell and hid the gun in the shower area. *Id.*

10. *See Farmer,* 511 U.S. at 838, 114 S.Ct. 1970 (holding that an official's failure to alleviate a risk that he should have perceived, but did not, is insufficient for a finding of liability); *Tucker v. Evans,* 276 F.3d 999, 1002 (8th Cir.2002) (concluding that "negligence" and "gross negligence" are insufficient to establish a failure to protect claim).

11. *See Fender v. Bull,* 166 Fed.Appx. 869 (8th Cir.2006) (unpublished opinion) (providing

contrast, Defendants have presented evidence suggesting that Plaintiff planned the incident, without any assistance from Defendant Taylor, or other CCDC officials. In light of these sharply disputed issues of material fact, summary judgment is not appropriate. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, Plaintiff should be allowed to proceed with his failure to protect claim against Defendants Busby and Taylor.

## C. Inhumane and Unsanitary Conditions of Confinement Claim

 Defendants argue that they are entitled to summary judgment on Plaintiff's conditions of confinement claim. *See* docket entries # 76, # 77, and # 78. None of the relevant material facts surrounding this claim are in dispute.

In his verified Complaint, Plaintiff alleges that, during his confinement in the CCDC, he encountered the following conditions: (1) a bug and rodent infestation; (2) exposed wires hanging from ceiling fixtures; (3) backed-up plumbing; and (4) a malfunctioning ventilation system. *See* docket entry # 2. While he was in protective custody after the November 30, 2007 incident, he claims that: (1) he had no drinkable water in his cell; (2) he was forced to sleep on the floor; and (3) he was not allowed to shower for seven days. *Id.* In support of these claims, the only evidence Plaintiff has presented are photographs of the CCDC shower; a drain in the shower floor; and electrical wires hanging from a broken light fixture in the

ceiling.[12] *See* docket entry # 82, attachments.

In contrast, Defendants have produced daily jail records and Defendant Boyd's Affidavit explaining that: (1) during the time Plaintiff was incarcerated at the CCDC, a professional exterminator routinely sprayed the facility for rodents and bugs; (2) ceiling light fixtures were occasionally pulled down by inmates, but none of the exposed wires were hazardous or located in cells where Plaintiff was confined; (3) the CCDC ventilation system was operational, and only temporarily malfunctioned when inmates put paper and other materials in the vents; (4) the water in each cell was for lavatory use only, but fresh water was located in coolers in the pods, and brought to Plaintiff's cell several times a day; (5) Plaintiff was allowed to purchase drinks and other items from the commissary; (6) while in protective custody, Plaintiff did not have a mattress, but he was provided with water, a concrete sleeping slab, and extra blankets; and (7) Plaintiff was provided with supplies to clean his cell on a daily basis. *See* docket entry # 78, Exs. 3 and 7.

 The United States Supreme Court has explained that the "Constitution does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Thus, in order to prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must prove that: (1) objectively, the conditions constituted a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately

---

that a prisoner states a valid failure to protect claim if he alleges that a guard "intentionally opened [a prisoner's] cell door for the purpose of assisting the attacker in assaulting" the plaintiff); *Newman v. Holmes,* 122 F.3d 650, 653 (8th Cir.1997) (same).

**12.** It is impossible to determine from the photographs if there is standing water in the bottom of the shower or if the shower drain is clogged. Additionally, it is unclear where in the CCDC the broken light fixture was located. *See* docket entry # 82, attachments.

indifferent to the risk of harm posed by the conditions. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir.2004); *Smith v. Copeland*, 87 F.3d 265, 267–68 (8th Cir. 1996).

Even if the Court accepts as true all of Plaintiff's allegations regarding the conditions he encountered at the CCDC, he has failed to establish that those conditions created a substantial risk of harm to his health or safety. *See Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (explaining that "extreme deprivations" are required in order to sustain a conditions of confinement claim, and that "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a constitutional violation); *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (holding that "nothing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists").

■ Furthermore, as to the subjective element, Defendants have presented *unrefutted* evidence establishing that they promptly and regularly took the necessary actions to abate the complained of conditions at the CCDC, i.e., they used an exterminator; promptly removed items jammed into the vents of the ventilation system; gave Plaintiff extra blankets; brought drinkable water to his cell; and provided him daily with cleaning supplies. Thus, there is no evidence suggesting that Defendants were deliberately indifferent to any of the conditions Plaintiff claims he encountered at the CCDC. *See Revels*, 382 F.3d at 875 (explaining that to "establish deliberate indifference, the plaintiff must show the defendant was substantially aware of *but disregarded* an excessive

risk to inmate health or safety")(emphasis added); *Tokar v. Armontrout*, 97 F.3d 1078, 1082 (8th Cir.1996) (affirming the grant of summary judgment on a conditions of confinement claim when there was evidence that the prisoner was provided with cleaning materials); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir.1994) (same). Thus, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's conditions of confinement claim.

### D. Free Exercise of Religion Claim

■ Defendants argue that they are entitled to summary judgment on Plaintiff's free exercise of religion claim. The material facts surrounding this claim are not in dispute.

The parties agree that, after the November 30, 2007 incident, Defendants placed Plaintiff in protective custody, until December 19, 2007, when he was transported to the ADC. *See* docket entries # 78, # 80, and # 82. Plaintiff alleges that, while he was in protective custody, Defendants seized his Bible. *See* docket entry # 2. Importantly, Defendants neither admit nor deny this allegation. *See* docket entries # 77 and # 78.

■ Although prisoners retain their First Amendment rights, limitations may be placed on the exercise of those rights in light of the needs of the prison system. *See Murphy v. Missouri Dept. of Corr.*, 372 F.3d 979, 982 (8th Cir.2004). Thus, First Amendment claims that would otherwise receive strict scrutiny, if raised by a member of the general public, are analyzed under a rational basis standard if raised by a prisoner. *Turner v. Safley*, 482 U.S. 78, 81, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).[13]

---

**13.** The *Turner* rational basis test applies to a variety of religion, speech, and association

claims brought under the First Amendment. *See Murphy*, 372 F.3d at 982–87.

The United States Supreme Court has developed a two-part test for evaluating a prisoner's free exercise of religion claim. First, as a threshold matter, a prisoner must demonstrate that defendants' actions substantially burdened his sincerely held religious belief.[14] *Gladson v. Iowa Dept. of Corr.*, 551 F.3d 825, 831–32 (8th Cir.2009); *Murphy*, 372 F.3d at 982. The burden then shifts to defendants to establish that the religious restriction is, nevertheless, constitutional because it is "reasonably related to legitimate penological objectives."[15] *Id.*

Without admitting or denying that they seized Plaintiff's Bible for the nineteen days that he was in protective custody, Defendants argue that Plaintiff has failed to state a valid free exercise claim because he does not allege that the lack of a Bible prevented him from practicing *his religion in other ways*. *See* docket entries # 77 and # 78 (emphasis added).

Under *Gladson* and *Murphy*, Plaintiff is not required to make such an allegation in order to state a valid free exercise claim. *See Gladson*, 551 F.3d at 831–32; *Murphy*, 372 F.3d at 988. Instead, as previously explained, he is only required to allege that Defendants prevented him from practicing a central tenet of his faith, which in

this case, appears to be regularly reading his Bible. Furthermore, the Eighth Circuit has held, in several cases, that prisoners state viable free exercise claims when they allege that prison officials have limited their access to religious reading materials. *See Roddy v. Banks*, Case No. 03–3735, 2005 WL 433404 (8th Cir. Feb. 25, 2005) (unpublished opinion) (holding that a prisoner stated a valid free exercise of religion claim where he alleged that prison officials refused to allow him to receive certain religious books); *Williams v. Brimeyer*, 116 F.3d 351, 354–55 (8th Cir.1997) (same); *Weir v. Nix*, 114 F.3d 817, 821–22 (8th Cir.1997) (noting that a prisoner stated a viable, but ultimately unsuccessful, free exercise of religion claim where he alleged prison officials unreasonably limited the number of religious books he could keep in his cell and prevented him from taking a Bible into the prison yard). Thus, the Court concludes that Plaintiff has *pled* a valid free exercise claim, sufficient to withstand Defendants' Motion for Summary Judgment.

As previously noted, the analysis of a free exercise claim is fact intensive, and neither party has provided the Court with *any evidence* regarding the merits of Plaintiff's claim.[16] Accordingly, given the

---

**14.** To constitute a "substantial burden," the government policy or action must: "[1] significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; [2] meaningfully curtail a person's ability to express adherence to his or her faith; or [3] deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Murphy*, 372 F.3d at 988 (citing *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir.1997)).

**15.** When making this determination, a court must consider whether: (1) there is a "valid rational connection between the prison regulation and the government interest justifying it;" (2) "there is an alternative means available to the prison inmates to exercise the right;" (3) "an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources;" and (4) "there is an alternative that fully accommodates the prisoner at *de minimis* cost to valid penological interests." *Murphy*, 372 F.3d at 982–83 (quoting *Turner*, 482 U.S. at 89–91, 107 S.Ct. 2254).

**16.** For instance, it is unclear: (1) whether Defendants actually seized Plaintiff's Bible, and if so, for how long; (2) why the Bible was allegedly seized; (3) if Plaintiff has access to any other religious materials in his cell; and (4) whether Plaintiff was able to visit with a chaplain, attend religious services, or otherwise practice his religious beliefs.

currently undeveloped state of Defendants' motion papers, the Court concludes that summary judgment on Plaintiff's free exercise claim against Defendants Busby, Boyd, Bonner, Beasley, and Mobley is not appropriate.

### E. Freedom of Association and Freedom of Speech Claims

 Defendants argue that they are entitled to summary judgment on Plaintiff's freedom of association and freedom of speech claims. *See* docket entries # 76, # 77, and # 78. Although there are some factual disputes regarding this claim, they are not relevant or material to the resolution of Defendants' Motion for Summary Judgment.

In his verified Complaint, Plaintiff alleges that Defendants did not allow him any phone, visitation, or mail privileges while he was held in protective custody from December 1 through December 19, 2007. *See* docket entry # 2. However, Plaintiff has failed to offer any evidence in support of this contention. *Id.*

In his Affidavit, Defendant Boyd explains that Plaintiff did not have any phone or visitation privileges, from December 1 through 5, 2007, because they were installing equipment to monitor his communications. *See* docket entry # 78, Ex. 7. According to Defendant Boyd, these security measures were necessary because Plaintiff was under investigation for planning and participating in the November 30, 2007 shooting that took place in his cell. *Id.*

Contrary to the allegations in Plaintiff's Complaint, CCDC jail notes and phone logs demonstrate that he used the phone on December 5 and 6, 2007. *See* docket entry # 78, Exs. 3 and # 8. Phone logs also establish that, over the next ten days, Plaintiff made phone calls almost every day. *Id.*

According to a December 6, 2007 incident report prepared by Defendant Bonner, Plaintiff told Defendants Bonner and Mobley that *unspecified jailors, who are not parties to this action,* refused to allow Plaintiff to receive mail or visit with his mother and preacher. *Id.,* Ex. 2. The incident report further states that Defendants Bonner and Mobley told Plaintiff that they were unaware of the problem and that they would immediately remedy the situation. *Id.* Jail logs establish that, over the next ten days, Plaintiff had at least three visitors. *Id.* at Exs. 3 and 8. Additionally, there is *no evidence* that any of Plaintiff's visitors were turned away or that anyone at the CCDC refused to send or deliver Plaintiff's mail. *Id.*

It is undisputed that, on December 17, 2007, Plaintiff received a disciplinary and Defendant Bonner ordered him to be placed in lock down, with all privileges suspended. *Id.,* Ex. 2. Plaintiff was transported to the ADC on December 19, 2007. *Id.,* Ex. 10. Thus, it appears that his mail, phone, and visitation privileges were suspended for only two days, and the suspension of these privileges was the direct result of Plaintiff committing a disciplinary infraction while he was in protective custody.

Plaintiff contends that Defendants violated his First Amendment freedom of association and speech rights when they temporarily denied him visitation, phone, and mailing privileges. *See* docket entries # 2 and # 8. As previously explained, under *Turner,* a rational basis test applies to First Amendment claims raised by prisoners. *See Turner v. Safley,* 482 U.S. 78, 89–94, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (applying the rational basis test to mailing and association/marriage rights); *Overton v. Bazzetta,* 539 U.S. 126, 132–36, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (applying the *Turner* rational basis test to visitation rights, and explaining that "freedom of association is among the rights least compatible with incarceration"); *Benzel v.*

*Grammer,* 869 F.2d 1105, 1108–9 (8th Cir. 1989) (applying the *Turner* rational basis test to phone privileges).

■■■ In applying the *Turner* rational basis test, a court must consider whether: (1) there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) alternative means of exercising their rights remain open to the prisoners; (3) accommodation of the asserted rights will trigger a ripple effect on fellow inmates and prison officials; and (4) a ready alternative to the regulation would fully accommodate the prisoners' rights at a *de minimis* cost to the valid penological interest. *Id.*

It is *undisputed* that legitimate security concerns justified Defendants' decision to suspend Plaintiff's phone and visitation from December 1 through 5, 2007. Once Defendants had installed proper equipment to monitor his conversations, Plaintiff's phone privileges were restored. Moreover, Plaintiff was only denied phone and visitation privileges for five days. *See Overton,* 539 U.S. at 133–137, 123 S.Ct. 2162 (holding that a two-year suspension of visitation privileges did not violate either the First Amendment's right to freedom of association).

On December 6, 2007, Plaintiff complained that individuals, *who are not Defendants in this action,* refused to allow him to receive mail and prevented his mother and pastor from visiting with him. However, it is *undisputed* that Defendants Bonner and Mobley promptly took correc-

tive action as soon as they were aware of the situation. *See Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir.1993) (explaining that there is no *respondeat superior* liability in § 1983 action, thus, a supervisor can only be held liable if he is made aware of the situation, but fails to take corrective action). In fact, the *undisputed* evidence demonstrates that, after Plaintiff lodged his complaint, Defendants Bonner and Mobley took corrective action which allowed Plaintiff to see several visitors between December 7 and 16, 2007.

Finally, it is undisputed that Defendants only suspended Plaintiff's privileges, for two or three days, while he was in lockdown from December 17 to 19, 2007. In *Overton,* 539 U.S. at 134, 123 S.Ct. 2162, the Court explicitly held that the temporary suspension of privileges for disciplinary reasons does not violate the First Amendment because "withdrawing ... privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." [17] Accordingly, the Court concludes that Defendants are entitled to summary judgment on this claim.

**F. Inadequate Medical Care Claim**

Finally, Plaintiff alleges in his Complaint and Amended Complaint that *unspecified individuals* failed to provide him with adequate medical care for asthma. *See* docket entries # 2 and # 8. Although he was given the opportunity to do so, Plaintiff has failed to name *any* Defendants who were involved with allegedly providing him with inadequate medical care.[18] Accord-

17. Plaintiff also alleged that, when Defendants placed him in lock down and withdrew all of his privileges, *without holding a hearing,* they violated his due process rights. *See* docket entries # 79 and # 80. The Court has previously dismissed this Fourteenth Amendment claim. *See* docket entries # 9 and # 13.

18. On July 29, 2008, the Court entered an Order giving Plaintiff 120 days to file a Mo-

tion for Service providing the names and service addresses for the John Doe Defendants, who failed to provide him with adequate medical care. *See* docket entry# 13. Importantly, the Court advised Plaintiff that, if he failed to do so, "the John Doe Defendants *and* his inadequate medical care claim will be dismissed, without prejudice, due to a lack of service pursuant to Fed.R.Civ.P. 4(m)." *See*

ingly, Plaintiff's inadequate medical care claim should be dismissed, without prejudice.

### G. Physical Injury Rule

Defendants argue that this case "should be summarily dismissed as a matter of law, because Plaintiff has not shown any actual physical injury that has resulted from any of his claims." [19] *See* docket entry # 77 at 18. There are two problems with Defendants' argument.

■ First, it is undisputed that Plaintiff was physically injured during the November 30, 2007 incident. Second, the Eighth Circuit has clarified that, while compensatory damages are precluded by § 1997e(e) if there is no showing of a physical injury, a prisoner can still recover nominal damages, punitive damages, and equitable injunctive relief for the constitutional violation.[20] *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir.2004). Accordingly, the Court concludes that this argument is without merit.

### H. Official Capacity Claims

■ Plaintiff has named Defendants in both their individual and official capacities. "A suit against a county is not regarded as a suit against the state within the meaning of the Eleventh Amendment." *Land v. Washington County, Mn.*, 243 F.3d 1093, 1095 n. 3 (8th Cir.2001); *see also Hadley v. N. Ark. Comm. Tech. Col-*

*lege*, 76 F.3d 1437, 1438 (8th Cir.1996) (holding that "Eleventh Amendment immunity does not extend to independent political subdivisions created by the State, such as counties and cities"). Thus, a plaintiff may sue a county official in his or official capacity for monetary damages. *Id.* However, in order to prevail on such a claim, the plaintiff must establish that the constitutional violation was the result of an official policy or widespread custom or practice. *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir.2007); *Grayson v. Ross*, 454 F.3d 802, 810–11 (8th Cir.2006).

Plaintiff has *not* alleged that any of the constitutional violations raised in this action are the result of an official policy, custom, or practice. Thus, all of Plaintiff's official capacity claims should be dismissed, with prejudice, and he should only be allowed to proceed against Defendants, in their individual capacities.

### I. Qualified Immunity

■ Finally, Defendants raise qualified immunity as a blanket defense, without making any attempt to tailor that argument to the specific facts surrounding each of Plaintiff's claims. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (explaining that qualified immunity is a fact-intensive inquiry that must be "undertaken in light of the specific context of the case, [and] not as a

---

docket entry # 9 at 4 (emphasis added). Plaintiff failed to comply with the July 29, 2008 Order.

On April 23, 2009, the undersigned United States Magistrate Judge submitted a proposed Order dismissing the John Doe Defendants from this action. *See* docket entry # 87. However, it inadvertently failed to also dismiss Plaintiff's inadequate medical care claim at that time. To correct that oversight, this claim should now be dismissed.

**19.** The Prison Litigation Act provides: "No Federal civil action may be brought by a

prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

**20.** In other words, if Plaintiff prevails on his freedom of religion claim, which does not involve any physical injury, he can recover nominal damages, punitive damages, and declaratory relief. Of course, any request for injunctive relief is now moot because Plaintiff is no longer confined in the CCDC. *See Owens v. Isaac*, 487 F.3d 561, 564 (8th Cir.2007).

broad general proposition"); *Davis v. Hall,* 375 F.3d 703, 712 (8th Cir.2004) (same). Thus, Defendants have failed to establish that they are entitled to qualified immunity on any of Plaintiff's claims.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (docket entry # 76) be GRANTED IN PART, and DENIED IN PART, such that: (a) Plaintiff should be allowed to PROCEED with his failure to protect and free exercise of religion claims against Defendants in their *individual capacities only;* and (b) all other claims be DISMISSED, WITH PREJUDICE.

2. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommended Partial Disposition would not be taken in good faith.